**Joanna ANDRULONIS, Individually and as Conservator of the Property of Jerome Andrulonis, Plaintiff–Appellant–Cross–Appellee,**

v.

**UNITED STATES of America, Defendant–Third–Party Plaintiff–Appellee–Cross–Appellant,**

**Glatt GmbH; Wisconsin Alumni Research Foundation, Inc.; Warf Institute, Inc.; Raltech Scientific Services; Ralston Purina Company; Eli Lilly Company; John L. Thompson and Sons and Company; Glatt Air Techniques, Inc., Defendants,**

**New York State Department of Health, Third–Party Defendant–Appellee–Cross–Appellant.**

No. 1124, Dockets 93–6228, 93–6272 and 93–6274.

United States Court of Appeals, Second Circuit.

Argued March 14, 1994.

Decided June 1, 1994.

Randall J. Ezick, Albany, NY (Paul H. Schop, Roemer & Featherstonhaugh, P.C., of counsel), for plaintiff-appellant-cross-appellee Joanna Andrulonis.

William G. Cole, Dept. of Justice, Washington, DC (Gary L. Sharpe, U.S. Atty., Frank W. Hunger, Asst. Atty. Gen., Robert S. Greenspan, Appellate Staff Civ. Div., Dept. of Justice, of counsel), for defendant-third-party plaintiff-appellee-cross-appellant U.S.

Michael S. Buskus, Asst. Atty. Gen., Albany, NY (Robert Abrams, Atty. Gen., State of NY, Peter H. Schiff, Deputy Sol. Gen., Nancy A. Spiegel, Asst. Atty. Gen., of counsel), for third-party defendant-appellee-cross-appellant New York State Dept. of Health.

Before: WALKER, McLAUGHLIN and RONEY,* Circuit Judges.

---

McLAUGHLIN, Circuit Judge:

Seventeen years ago, rabies ravaged the brain of an aspiring young scientist when he was exposed to a highly concentrated strain of the virus in a preventable laboratory accident. For the past fourteen years, the ensuing negligence case has meandered through the federal judicial system, traveling from the trial court to the United States Supreme Court and back again, stopping each way before our Court. On this third occasion, we hope to lay this tragic case to rest by resolving the final disputed issue in this case, namely, the parties' rights to post-judgment interest.

This case essentially involves two lawsuits tried for convenience under one roof: a negligence claim brought by the scientist's wife, Joanna Andrulonis, against the United States Government (the "Government") under the Federal Tort Claims Act ("FTCA"); and a third-party claim for contribution brought by the Government against the New York State Department of Health ("NYSDOH") under New York law. Following a bench trial in the Northern District of New York, the district court (Howard G. Munson, *Senior District Judge*) entered judgment in favor of Andrulonis on her negligence claim, and in favor of the Government on its contribution claim. An appeal was taken.

After this Court affirmed the trial court's judgment in most respects, *see Andrulonis v. United States,* 924 F.2d 1210 (2d Cir.1991), *vacated, New York State Dep't of Health v. Andrulonis,* — U.S. —, 112 S.Ct. 39, 116 L.Ed.2d 18 (1991), *and reinstated, Andrulonis v. United States,* 952 F.2d 652 (2d Cir. 1991), *and cert. denied,* — U.S. —, 112 S.Ct. 2992, 120 L.Ed.2d 869 (1992), the district court entered a second amended judgment, incorporating a settlement agreement reached after the appeal. The second amended judgment included awards of post-judgment interest to both the plaintiff and United States as third-party plaintiff, but it permitted the parties to apply to the district court for additional awards of interest. Not surprisingly, there were motions for addition-

---

* Honorable Paul H. Roney, of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

al postjudgment interest and the district court's rulings were reduced to yet a third amended judgment, from which all parties now appeal.

For the reasons that follow, we affirm in part, reverse in part, and remand.

## BACKGROUND

In the late 1970s, the United States Center for Disease Control ("CDC") joined with the NYSDOH in a massive effort to immunize wildlife from rabies. At the time, Jerome Andrulonis was a 34–year–old senior bacteriologist employed by the NYSDOH. Andrulonis worked under the direct supervision of Dr. John G. Debbie at the State's Griffin Laboratory near Albany, New York.

In March 1977, Dr. George M. Baer of the CDC prepared a powerful strain of the rabies virus and delivered it to Dr. Debbie for use in experiments to be conducted principally by Andrulonis. During such an experiment, Andrulonis was exposed to the potent strain when the virus escaped from the machine he was operating. Tragically, Andrulonis contracted rabies. While he survived, he suffered permanent brain damage.

In 1979, Joanna Andrulonis, individually and as conservator of her husband's property, sued the Government under the FTCA, alleging that her husband contracted the disease due, in large part, to the negligence of Drs. Baer and Debbie. Also named in the suit were a number of non-governmental defendants, including Eli Lilly & Company/John L. Thompson and Sons ("Lilly/Thompson"), the makers of a rabies vaccine that failed to protect Andrulonis. Although New York's Workers' Compensation law precluded Andrulonis from suing the NYSDOH directly, the Government impleaded the NYSDOH for contribution. Andrulonis ultimately settled with all defendants except the NYSDOH and the Government.

Following a bench trial, Judge Munson found the NYSDOH, the Government and Lilly/Thompson liable for $5,978,409.00 in damages. He apportioned liability at 65 percent for the NYSDOH, 30 percent for the Government and 5 percent for Lilly/Thompson.[1] *Andrulonis*, 724 F.Supp. at 1509. On October 18, 1989, the district court entered a single judgment incorporating both (1) Andrulonis's judgment against the Government (the "primary judgment"), and (2) the Government's judgment against the NYSDOH (the "contribution judgment").[2] As required by law, Andrulonis filed a transcript of that judgment with the United States Comptroller General on November 7, 1989. *See* 31 U.S.C. § 1304(a)(2).

The NYSDOH and the Government then appealed the district court's judgment to this Court. We affirmed Judge Munson's decision in most respects, but reversed and remanded for a recalculation of damages. *See Andrulonis v. United States*, 924 F.2d 1210 (2d Cir.1991). Specifically, we directed Judge Munson to recalculate the amount of set-off against the judgment to which the NYSDOH and the Government were entitled in light of the settlements entered into between Andrulonis and the non-governmental defendants. The mandate on our decision (the "first mandate of affirmance") issued March 12, 1991. The mandate did not contain instructions to the district court regarding the allowance of postjudgment interest, however. *Cf.* Fed.R.App.P. 37.

The NYSDOH then petitioned the United States Supreme Court for a writ of certiorari. Notably, the Government did not file a certiorari petition on its own behalf, but it filed a brief supporting the NYSDOH. It was the Government's position that this case did not present a "suitable vehicle" for Supreme Court review of the FTCA because

---

**1.** Because Lilly/Thompson had settled with Andrulonis for an amount less than its equitable share, the district court reduced the primary judgment by 5 percent, representing Lilly/Thompson's proportionate share of liability. *See* N.Y.Gen.Oblig. Law § 15–108 (McKinney 1989). The district court then adjusted the proportionate shares of liability for the reduced judgment at 68.42 percent ($^{65}\!/_{95}$ths) for the NYS-

DOH, and 31.58 percent ($^{30}\!/_{95}$ths) for the Government. *See Andrulonis v. United States*, 724 F.Supp. 1421, 1538 (N.D.N.Y.1989).

**2.** The district court entered an amended judgment on December 15, 1989 to correct a miscalculation in the amount of damages owed to the Government on its contribution claim.

the case involved "relatively unusual and complicated facts." Brief for the United States as Respondent in Support of Petitioner ("Government's Brief") at 7. Instead, the Government's Brief urged the Supreme Court to grant the NYSDOH's petition, vacate our judgment, and remand the case for reconsideration in light of the Court's then-recent FTCA decision in *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).

In a memorandum decision, the Supreme Court granted the relief requested by the Government: it summarily vacated our judgment and remanded the case for further consideration in light of *Gaubert. See New York State Dep't of Health v. Andrulonis,* —— U.S. ——, 112 S.Ct. 39, 116 L.Ed.2d 18 (1991). Following the Supreme Court's decision, this Court entered an order vacating the first mandate of affirmance.

On remand, we reconsidered the Government's liability, but concluded that *Gaubert* did not undermine our earlier decision. *See Andrulonis v. United States,* 952 F.2d 652 (2d Cir.1991). Accordingly, we reinstated our earlier opinion, which had affirmed in part, and reversed and remanded in part. The mandate on our second decision (the "second mandate of affirmance") issued February 14, 1992. Again, the mandate did not instruct the district court regarding postjudgment interest.

When the case finally arrived back in the district court, the parties entered into a comprehensive settlement agreement that resolved the remanded damages issue. Under the settlement, the parties agreed to the entry of an amended judgment that would (1) reduce Andrulonis's primary judgment to $5,357,240.00, and (2) reduce the Government's contribution judgment to $3,665,-480.00 (a sum equal to 68.42 percent of the primary judgment).

In addition, the settlement partially resolved a dispute that had arisen regarding postjudgment interest. Under the settlement, the Government agreed to pay Andrulonis $600,023.00 in postjudgment interest on the primary judgment, calculated from the date the transcript of judgment was filed with the Comptroller General (November 7, 1989) through the day before the *first* mandate of affirmance (March 11, 1991). *See* 31 U.S.C. § 1304(b)(1)(A). In the apparent belief that it was liable to the Government for a *pro rata* share of the postjudgment *interest* that the Government owed Andrulonis, the NYSDOH agreed to pay the Government $410,542.00 (68.42 percent of the $600,023.00 interest) in addition to its proportionate share of the primary judgment. That amount was characterized in the settlement as postjudgment interest on the contribution judgment for the same November 7, 1989—March 11, 1991 period. Because the parties could not agree on whether postjudgment interest accrued during other periods, the settlement permitted the parties to apply to the district court for additional awards of interest.

The settlement agreement was reduced to a second amended judgment, which was entered February 19, 1993. Four days later, the Government paid Andrulonis $5,957,-263.00 ($5,357,240.00 in principal plus the stipulated $600,023.00 in interest) in full satisfaction of the primary judgment. On April 16, 1993, the NYSDOH paid the Government $4,076,022.00 ($3,665,480.00 in principal plus $410,542.00 in interest) in full satisfaction of the contribution judgment.

Exercising their respective rights under the settlement, the parties moved in the district court for additional awards of postjudgment interest.

(1) *The Plaintiff's Motion:* Andrulonis argued that she was entitled to additional postjudgment interest through the date the Government satisfied her judgment (February 23, 1993). Alternatively, she argued that interest should continue to run at least until our Court's *second* mandate of affirmance, since the first mandate had been vacated. Judge Munson rejected both arguments, reasoning that the applicable statute, 31 U.S.C. § 1304(b), allowed interest against the Government only through the first mandate.

(2) *The Government's Motion:* The Government argued that it was entitled to additional postjudgment interest from the NYSDOH on its contribution judgment under 28 U.S.C. § 1961, for the entire period between

the date the original contribution judgment was entered (October 18, 1989) and the date the NYSDOH satisfied that judgment (April 16, 1993).[3] Judge Munson granted the Government's motion in part, and denied it in part.

Relying on the New York law of contribution, Judge Munson ruled that the Government could not collect interest on its contribution judgment until it paid Andrulonis more than its equitable share of the primary judgment. Since the Government did not pay Andrulonis until February 23, 1993, Judge Munson concluded that the Government could collect postjudgment interest only from that date through the date the NYSDOH satisfied the Government's contribution judgment (April 16, 1993).[4]

(3) *The NYSDOH's Motion:* The NYSDOH also challenged the calculation of interest, arguing (apparently for the first time) that it was liable for postjudgment interest only for the period between the date the Government paid Andrulonis on the primary judgment and the date the NYSDOH paid the Government on the contribution judgment. Because the NYSDOH had already paid a sum representing postjudgment interest for the period between November 7, 1989 and March 11, 1991, the NYSDOH moved for an order (A) "amending/correcting" the date of the original contribution judgment, and (B) directing the Government to refund any excess postjudgment interest it received under the settlement.

Judge Munson denied the NYSDOH's motion in its entirety. First, he rejected the NYSDOH's request to amend the original judgment as untimely. *See* Fed.R.Civ.P. 60(b) (relief from a judgment on the grounds of mistake or inadvertence must be made within one year from the date judgment was entered). Judge Munson also denied the NYSDOH's motion for a refund of interest allegedly overpaid, reasoning that the NYS-

DOH's misunderstanding of its liability for interest provided no basis to disturb the settlement.

All parties now appeal from the third amended judgment.

## DISCUSSION

Postjudgment interest is designed to compensate the plaintiff for the delay it suffers from the time damages are reduced to an enforceable judgment to the time the defendant pays the judgment. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835–36, 110 S.Ct. 1570, 1575–76, 108 L.Ed.2d 842 (1990); *Dunn v. Hovic,* 13 F.3d 58, 60 (3d Cir.1993); *see generally* Susan Margaret Payor, Comment, *Post-judgment Interest in Federal Courts,* 37 Emory L.J. 495, 495–96 (1988). Although the principle underlying postjudgment interest is clear enough, federal courts do not have a free hand to fashion postjudgment interest awards to fit the equities of a case. Rather, postjudgment interest in federal court is a creature of statute. Hence, when the animating principle suggests one result and the statute another, the statute controls. *See Kaiser Aluminum,* 494 U.S. at 839, 110 S.Ct. at 1578; *Magee v. United States Lines, Inc.,* 976 F.2d 821, 823–24 (2d Cir.1992).

### I. *Postjudgment Interest on the Primary Judgment*

Under 31 U.S.C. § 1304(b), interest on judgments entered against the United States may be paid "only when the judgment becomes final after review on appeal or petition by the United States Government, and then only from the date of filing of the transcript of the judgment with the Comptroller General through the day before the date of the mandate of affirmance." 31 U.S.C. § 1304(b)(1)(A). In other words, the prevailing plaintiff in an FTCA case is enti-

---

**3.** Because the NYSDOH had already paid the Government interest during the period from November 7, 1989 through March 11, 1991 pursuant to the settlement, the Government's motion actually sought additional interest for two periods: from October 18, 1989 through November 6, 1989, and from March 12, 1991 through April 16, 1993.

**4.** When Judge Munson's decision was reduced to a third amended judgment, interest on the contribution judgment was awarded from November 7, 1989 through March 11, 1991, as per the settlement, *and* from February 24, 1993 through April 15, 1993, as per Judge Munson's ruling on the Government's motion.

tled to postjudgment interest only after the judgment is reviewed on appeal, and then only from the date the transcript of judgment is filed; and the interest runs through the day before the date of the appellate court's mandate affirming that judgment. *Cardillo v. United States,* 767 F.2d 33, 34 (2d Cir.1985).

Applying this statute, Judge Munson ruled that Andrulonis was entitled to postjudgment interest on the primary judgment from the date the transcript of judgment was filed (November 7, 1989) through the day before the first mandate of affirmance (March 11, 1991). Andrulonis argues, however, that postjudgment interest should continue to run through the date the Government actually paid her in satisfaction of her judgment (February 23, 1993).

■ Andrulonis believes that Congress intended the United States to satisfy its judgments promptly, and argues that section 1304(b) should be read generously to compensate plaintiffs for the lost use of their money during the period between the mandate of affirmance and the date of payment. In her words, "the error of the lower court was in attempting a strict and literal interpretation of the statute" rather than "attempting to implement its intent." While we concede that the Government's delay in paying the judgment deprived Andrulonis of the use of her money, we must reject her invitation to disregard the statute's plain meaning.

■ Interest cannot be recovered against the United States, as sovereign, in the absence of an express waiver of immunity. *See Library of Congress v. Shaw,* 478 U.S. 310, 310–11, 106 S.Ct. 2957, 2959–60, 92 L.Ed.2d 250 (1986); *see also United States v. Thayer–West Point Hotel Co.,* 329 U.S. 585, 588, 67 S.Ct. 398, 399–400, 91 L.Ed. 521 (1947); *Boston Sand & Gravel Co. v. United States,* 278 U.S. 41, 47, 49 S.Ct. 52, 53, 73 L.Ed. 170 (1928); *see generally* Randall Kennedy, Note, *Interest in Judgments Against the Federal Government: The Need for Full Compensation,* 91 Yale L.J. 297, 302–07 (1981). A statutory waiver of this "no-interest rule" must be construed strictly in favor of the sovereign. *Shaw,* 478 U.S. at 318, 106 S.Ct. at 2963. While the United States has waived its immunity for interest in section 1304(b), we will not construe that waiver beyond what the language of the statute requires. *See id.*

The statute allows for interest against the United States "only ... through the day before the date of the mandate of affirmance." 31 U.S.C. § 1304(b)(1)(A). Nothing in section 1304(b) requires the Government to satisfy its judgment promptly. And, nothing in the statute provides for an award of interest beyond the mandate of affirmance. Accordingly—the equities notwithstanding—Andrulonis is not entitled to additional postjudgment interest through the date of payment. *See Desart v. United States,* 947 F.2d 871, 872 (9th Cir.1991) ("[n]o reported decision of this or any other court has held that a prevailing plaintiff in a FTCA action is entitled to interest against the government beyond the dates specified by section 1304(b)(1)(A)").

■ In the alternative, Andrulonis argues that she is entitled to interest at least through the *second* mandate of affirmance. Although the Government took a contrary position in the district court, it now agrees that Andrulonis is entitled to interest through the second mandate. The NYS-DOH—fearful that it will owe a proportionate share of any additional interest awarded to Andrulonis—continues to argue that the district court was correct when it awarded interest only through the first mandate.

Although we do not believe ourselves bound by the Government's concession, we agree with the Government on the merits that Andrulonis is entitled to additional interest through the second mandate. Judge Munson interpreted the phrase "mandate of affirmance" in section 1304(b) to mean the one that issued following an "appeal or petition *by the United States.*" 31 U.S.C. § 1304(b)(1)(A) (emphasis added). In this case, however, the United States did not appeal to the Supreme Court; the NYSDOH did. Since only the first mandate followed an appeal *by the United States,* Judge Munson concluded that the first mandate stopped the running of interest under section 1304(b). We disagree.

True, the Government did not itself petition the Supreme Court to review our decision. Nevertheless, we do not read section 1304(b)'s reference to an "appeal or petition by the United States" to exclude a situation where, as in this case, the United States actively joins a petition for review brought by its joint tortfeasor. Here, the Government's litigation posture in the Supreme Court was not merely that of a disinterested observer. The Government submitted a brief in support of the NYSDOH's petition, and asked the Supreme Court to vacate our decision in favor of Andrulonis. Indeed, the Government admitted in that brief that it was a party to the case under the Supreme Court's rules, and claimed the right to any substantive relief granted to the NYSDOH. Finally, we note that the Government's appellate efforts were entirely successful, since the Supreme Court granted the very relief it requested. We believe that the Government's actions in support of its joint tortfeasor's petition for certiorari were tantamount to an "appeal" by the Government itself for purposes of section 1304(b).

Even if we were inclined to agree with the district court that the Government is not to blame for the delay until the second mandate, we would nevertheless hold that the first mandate cannot control. A circuit court's mandate comprises its judgment, opinion and directions to the district court. Fed.R.App.P. 41(a). The Supreme Court vacated our first judgment, however. In so doing, it deprived our prior opinion of its legal significance and precedential value until our second mandate resurrected it. *See Flores v. Meese,* 934 F.2d 991, 997 (9th Cir. 1990); *see also Falcon v. General Tel. Co.,* 815 F.2d 317, 320 (5th Cir.1987) ("In essence, when a judgment is vacated 'all is effectually extinguished.'"). This Court accordingly entered a ministerial order vacating the first mandate, since by then it was but a *brutum fulmen,* an empty shell. We cannot believe Congress intended the "mandate of affirmance" in section 1304(b) to refer to such a hollow mandate.

The Fifth Circuit's decision in *Transco Leasing Corp. v. United States,* 992 F.2d 552 (5th Cir.1993), is not necessarily to the contrary. There, as here, protracted FTCA litigation produced two mandates of affirmance. In deciding which one stopped the accrual of postjudgment interest against the United States, the Fifth Circuit strictly construed section 1304(b) to award interest only through the earlier of two mandates. *Transco Leasing,* 992 F.2d at 556. We agree, of course, that section 1304(b) must be strictly construed; but our decision to award postjudgment interest through the second mandate does not rest on a charitable construction of that statute. Rather, we select the second mandate because of the intervening Supreme Court appeal in this case, a factor not present in *Transco Leasing,* as well as its effect upon our earlier mandate.

In sum, we hold that postjudgment interest on Andrulonis's primary judgment should run until February 13, 1993, the day before the second mandate of affirmance.

## II. *Postjudgment Interest on the Contribution Judgment*

Section 1304(b)'s restrictions on awards of interest do not apply to defendants other than the United States. Hence, section 1304(b) does not govern interest on the Government's contribution judgment against the NYSDOH. We turn, therefore, to 28 U.S.C. § 1961, the general postjudgment interest statute.

Under section 1961, postjudgment interest runs from the "date of the entry of the judgment." 28 U.S.C. § 1961(a). Judge Munson observed, however, that the Government would reap an "impermissible windfall" were it allowed to recover interest against the NYSDOH from the date the contribution judgment was entered (October 18, 1989), since the Government did not part with any money for three and one-half years, when it paid Andrulonis on the primary judgment (February 23, 1993). As Judge Munson saw it:

The purpose of post-judgment interest is to compensate the party in whose favor the judgment was entered for any delay in payment. In the case at bar, although judgment was entered in 1989, the [Government] was not entitled to recover on its judgment for contribution from the [NYS-

DOH] until after it satisfied the primary judgment to the plaintiff.... Only after [February 23, 1993] did the [Government] suffer for delay in receiving the [NYS-DOH's] payment for contribution. It would run contrary to the intent, in my opinion, of Section 1961 to permit a party such as the [Government] to recover interest on a judgment for contribution when that party has not yet paid the underlying judgment.

Accordingly, Judge Munson held that interest on the contribution judgment did not begin to accrue until the Government actually paid Andrulonis (February 23, 1993), rather than the date judgment was entered (October 18, 1989). We agree with this result, but for quite different reasons.

■ When calculating postjudgment interest under section 1961, courts do not enjoy some amorphous equitable power to select a date other than the "date of the entry of the judgment" to trigger the running of interest, even if their laudable aim is to effectuate the compensatory purpose of the postjudgment interest statute. *See Kaiser Aluminum*, 494 U.S. at 834, 110 S.Ct. at 1575 (rejecting the view of those courts that had relied upon the "policy underlying the postjudgment interest statute" to award interest from the date of the verdict, rather than from the date of the judgment); *Magee*, 976 F.2d at 823–24 ("We do not approve of the district court's device of creating a make-believe date of entry whose sole purpose was to avoid the clear intent of section 1961 and thus the uniformity the section was intended to create."). Accordingly, Judge Munson erred when he invoked the principle underlying the postjudgment interest statute to disregard the clear language of the statute that interest be calculated from the date the judgment was entered.

■ Nevertheless, we reach a similar result when we focus on the judgment itself. Under *Kaiser Aluminum*, the "judgment" contemplated by section 1961 is one that is "'ascertained' in [a] meaningful way" and "supported by the evidence." *Kaiser Aluminum*, 494 U.S. at 836, 110 S.Ct. at 1576. *See Wachs v. Winter*, 569 F.Supp. 1438, 1449 (E.D.N.Y.1983). For the reasons that follow,

we believe the *pro rata* contribution judgment entered on October 18, ·1989, was not ascertained in any meaningful sense until the Government paid Andrulonis more than its *pro rata* share of the primary judgment. A brief digression into third-party practice and the underlying substantive law of contribution may help explain why this is so.

■ When the United States is sued under the FTCA, Federal Rule 14(a) permits it to implead a third-party defendant who "is or may be liable" to it for all or part of the plaintiff's judgment. *See* Fed.R.Civ.P. 14(a); *see, e.g., United States v. Yellow Cab Co.*, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951); *see generally* Charles A. Wright, *et al., Federal Practice & Procedure: Civil 2d* ["Wright & Miller"] § 1450, at 398–99 (1990). Thus, the rule permits a defendant to bring in a third-party defendant even though the defendant's claim is purely inchoate—*i.e.*, has not yet accrued under the governing substantive law—so long as the third-party defendant may become liable for all or part of the plaintiff's judgment. Federal impleader cannot, however, operate to enlarge the third-party plaintiff's right to recovery beyond that available under the controlling substantive law. *See Smith v. Whitmore*, 270 F.2d 741, 745 (3d Cir.1959); *Brown v. Cranston*, 132 F.2d 631, 633–34 (2d Cir.1942), *cert. denied*, 319 U.S. 741, 63 S.Ct. 1028, 87 L.Ed. 1698 (1943).

■ Under New York law, the right to contribution does not arise in favor of the defendant unless and until the defendant pays the plaintiff an amount exceeding its equitable share of the primary judgment. *See Klinger v. Dudley*, 41 N.Y.2d 362, 369, 393 N.Y.S.2d 323, 361 N.E.2d 974 (1977). In a federal case governed by New York law, Rule 14(a) nevertheless permits a defendant to implead a joint tortfeasor for contribution before the right to contribution accrues, because that third party "may be" liable to the defendant for a share of the plaintiff's primary judgment. The defendant's claim for contribution is thus properly characterized as "contingent." *See Wright & Miller* § 1451, at 407.

Because the underlying right to contribution is necessarily conditioned upon the defendant's satisfaction of the primary judgment, the judgment entered upon that claim should reflect this contingency. *See id.* at 410–11 ("The court is free to shape the relief on an accelerated or contingent claim to reflect the limitations of substantive state law."); 3 *Moore's Federal Practice* ¶ 14.11, at 14–77 (2d ed. 1994) ("The impleader judgment can be fashioned to protect the rights of the other tortfeasors, so that defendant's judgment over against them may not be enforced until the defendant has paid plaintiff's judgment[.]").

For example, the district court could permit judgment to be entered, but stay its execution until the third-party plaintiff demonstrates that the contingency has been satisfied. *See id.; see, e.g., Burris v. American Chicle Co.,* 120 F.2d 218, 223 (2d Cir.1941) (defendant's indemnity judgment against third-party defendant should be entered, but execution stayed until defendant pays plaintiff). Or, the defendant's judgment could be expressly conditioned upon the defendant's satisfaction of the primary judgment. In *Klinger v. Dudley,* for example, the New York Court of Appeals modified the contribution judgment entered therein "to provide that payment to defendant by the third-party defendants is conditioned upon payment by defendant to plaintiff of more than his proportionate share of the judgment, or an amount in full satisfaction of the judgment." 41 N.Y.2d at 372, 393 N.Y.S.2d 323, 361 N.E.2d 974. *See also* 8A *Carmody–Wait 2d* § 63:35 (1990) (proposing sample form for New York judgments that determine rights among codefendants).

The Third Circuit's decision in *Smith v. Whitmore,* 270 F.2d 741 (3d Cir.1959), is instructive. There, as here, the contribution judgment purported to award the third-party plaintiff a sum certain, calculated as a percentage of the plaintiff's judgment. *Smith,* 270 F.2d at 743. The Third Circuit observed, however, that the controlling substantive law conditioned the defendant's right to recover against the third-party defendant upon proof that the defendant had actually paid the plaintiff more than his *pro rata* share of the primary judgment. Accordingly, the court found that the judgment as entered was erroneous: "The quiver of the judgment should contain but two arrows—one directed to the liability of the defendant and one to the existence of the right of contribution." 270 F.2d at 746. The proper course, the court suggested, would be for the district court to enter a judgment for a *definite* sum as against the defendant, but for a *contingent* sum as against the third-party defendant. *Id.*

Ignoring the contingent nature of the Government's claim against the NYSDOH, the 1989 contribution judgment purported to award the Government an unconditional sum certain against the NYSDOH.[5] And, because that judgment was "entered" on October 18, 1989, *see* Fed.R.Civ.P. 58, the Government now claims the right to recover interest on the amount stated therein from "the date of the entry of the judgment" through the "date of payment." 28 U.S.C. § 1961(a) & (b). As the foregoing discussion demonstrates, however, the district court erred initially in awarding an unconditional sum certain to the Government in 1989. While the NYSDOH's *percentage* of liability was ascertained at the time judgment was entered, the *dollar* amount of damages to which the Government was entitled was not.

Rather than prolong the life of this fourteen-year old lawsuit by directing the district court to correct the original judgment, *see* Part III, *infra,* we believe the more prudent course is to construe the 1989 contribution judgment as one awarding damages conditioned upon the Government's payment to Andrulonis of an amount exceeding its proportionate share of the primary judgment, or an amount in full satisfaction of that judgment. *See Klinger,* 41 N.Y.2d at 372, 393 N.Y.S.2d 323, 361 N.E.2d 974. So construed,

---

5. The October 18, 1989 judgment reads, in relevant part, as follows:

IT IS ORDERED AND ADJUDGED in favor of Plaintiff Jerome Andrulonis against defendant United States of America in the amount of $5,978,- 409.00. Also judgment to be entered on behalf of Third-party plaintiff United States of America against third-party defendant New York State Department of Health in the amount of $3,729,785.00.

postjudgment interest cannot be calculated on the contingent amount awarded in the judgment before the date the contingency was satisfied. "It would be counterintuitive, to say the least, to believe that Congress intended postjudgment interest to be calculated from such a [non-ascertained] judgment." *Kaiser Aluminum,* 494 U.S. at 836, 110 S.Ct. at 1576. It was only when the Government paid Andrulonis more than its *pro rata* share of the primary judgment that the contribution award ripened into an ascertained "judgment" capable of sustaining an award of interest.

To hold otherwise would obligate third-party defendants to pay interest on judgments before they incurred any obligation to pay the principal. We cannot believe Congress intended such an absurd result, and we decline to read section 1961 to require it. In this case, the NYSDOH "could hardly have been expected to abate an obligation prior to the time that it had legally arisen, or now to pay compensation for this failure of prescience." *Gele v. Wilson,* 616 F.2d 146, 150 (5th Cir.1980). *Cf. Donnelly v. Brooklyn,* 121 N.Y. 9, 20, 24 N.E. 17 (1890) ("[i]t is obvious that if the duty to pay has not become absolute, the liability for interest does not arise").

Accordingly, we hold that postjudgment interest on the contribution judgment is properly calculated under section 1961 from the date the contribution award ripened into an unconditional, ascertained and enforceable judgment (February 23, 1993) through the date the NYSDOH paid the Government in satisfaction of that judgment (April 16, 1993). We therefore affirm Judge Munson's decision denying the Government's motion for additional interest.

### III. *Denial of the Rule 60 Motion*

The NYSDOH also moved in the district court under Rule 60 to amend the date of the original contribution judgment. The NYSDOH argued that both the court and counsel mistakenly permitted judgment to be entered on the contribution claim before the Government paid Andrulonis. We regard this motion as moot, however, since we now construe the contribution judgment to reflect the contingent nature of the underlying claim. *See*

Part II, *supra.* The NYSDOH is entitled to no more.

The second branch of the NYSDOH's motion sought relief from the second amended judgment, which incorporated the settlement agreement. Under the settlement, the NYSDOH agreed to pay the Government 68.42 percent of Andrulonis's primary judgment against the Government, *and* 68.42 percent of the interest on that judgment. The NYSDOH now believes that its settlement overpaid the Government by including interest.

In extraordinary circumstances, Rule 60(b) may be invoked to override the finality of judgments in the interests of justice. *See Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir.1986). However, the Rule does not allow district courts to "indulge a party's discontent over the effects of its bargain." *Kozlowski v. Coughlin,* 871 F.2d 241, 246 (2d Cir.1989). Accordingly, "[w]hen a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect." *United States v. Bank of New York,* 14 F.3d 756, 759 (2d Cir.1994); *see also Nemaizer,* 793 F.2d at 62 ("Mere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief."). We will not reverse the denial of a Rule 60(b) motion absent an abuse of discretion. *DeWeerth v. Baldinger,* 24 F.3d 416 (2d Cir. 1993). Because the NYSDOH's hindsight assessment of its bargain is not a permissible ground for Rule 60(b) relief, we hold that the district court did not abuse its discretion in denying the motion.

Even if we were empowered to dismantle the stipulation on grounds of a distorted prediction of a party's potential liability, we would nevertheless affirm the district court's decision for the simple reason that no mistake was made. Under New York law, when the defendant settles with the plaintiff in full satisfaction of the primary judgment, the third-party defendant's equitable share is calculated based on the total

amount (including interest) actually paid to the plaintiff. *See Rock v. Reed–Prentice Div. of Package Mach. Co.,* 39 N.Y.2d 34, 40–42, 382 N.Y.S.2d 720, 346 N.E.2d 520 (1976). Under the settlement, the Government paid Andrulonis $5,957,263.00, representing principal and interest on the primary judgment. When the Government paid Andrulonis, it became entitled to reimbursement from the NYSDOH for 68.42 percent of the *total* amount paid. Thereafter, the Government was entitled under section 1961 to postjudgment interest on the total amount paid to Andrulonis.[6] The NYSDOH did not pay the Government more than it owed under New York law.

## CONCLUSION

We reverse that part of the judgment which awarded postjudgment interest on the primary judgment only through March 11, 1991, and instead direct the district court to award interest through February 13, 1992, consistent with this opinion. In all other respects, the judgment is affirmed.

---

**6.** In light of our conclusion that the Government owes Andrulonis additional interest under section 1304(b), *see* Part I, *supra,* the Government is entitled to contribution from the NYSDOH of 68.42 percent of that additional sum.