**Robert RAPOPORT, Appellant,**

v.

**TESORO ALASKA PETROLEUM CO., Appellee.**

No. S–3234.

Supreme Court of Alaska.

April 27, 1990.

---

Daniel E. Winfree, Law Offices of Daniel E. Winfree, Fairbanks, for appellant.

Ronald E. Noel and David V. Burglin, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellee.

Before MATTHEWS, C.J., and BURKE, COMPTON and MOORE, JJ.

OPINION

COMPTON, Justice.

Default judgment was entered against Robert Rapoport when he failed to answer or appear to defend a suit by Tesoro Alaska Petroleum Co. (Tesoro). Rapoport here contends that the superior court abused its discretion in denying Rapoport's motion to set aside that default judgment. We affirm.

## I. FACTS AND PROCEEDINGS

■ On June 24, 1987, Tesoro filed suit against Robert Rapoport, Frank Chapados, Guy Whitney, and Interior Energy Corporation (IEC) seeking payment of an IEC corporate debt which Tesoro alleged that Rapoport, Whitney and Chapados had personally guaranteed. Rapoport was served by certified mail in California on July 13, 1987, and acknowledged receipt of the process documents by his signature. Rapoport took no action in response to this service. On August 13, 1987, Tesoro moved for, and on the 14th received, a default judgment against all defendants, including Rapoport.

On July 25, 1988, Rapoport moved to set aside the default judgment against him under Civil Rule 60(b). Rapoport's allegation was that he was too ill to appreciate the possibility he might be sued in regard to his guaranty. Rapoport claimed that he was "seriously injured in an automobile accident in April 1987," and that as a result "has been unable to deal with complicated or serious business matters." Rapoport contended that his illness constituted "excusable neglect" within the meaning of Civil Rule 60(b)(1).[1]

Rapoport testified that "the car accident 'triggered' a severe bout of disorientation and depression." Rapoport claimed he "did not have the ability to respond to correspondence or realize the nature and effect of various actions which were taking place."

---

1. Civil Rule 60(b)(1) provides for relief from judgments for "mistake, inadvertence, surprise, or excusable neglect."

Rapoport supported his claim with the affidavit of Ivan Tiholiz, M.D. Tiholiz testified that Rapoport suffers from controlled diabetes. Tiholiz also testified that on April 17, 1987, Rapoport was involved in an automobile accident, and that "subsequent to this automobile accident, Rapoport developed a progression of diabetes mellitus and depression." Tiholiz later testified, however, that while Rapoport was in his opinion "in and out of competence," "obtundant (sic)," [2] "bumbling along," and sometimes in "lala land," any impairment was not constant but rather sporadic.

However, the record also reveals the following. Diane Duntze, the nurse on duty at the time of Rapoport's accident, testified that the automobile accident resulted in nothing more than some bruised ribs, and that Rapoport showed no signs of loss of consciousness, headache, or visual disturbances. Rapoport was "alert and oriented."

On April 27, 1987, Rapoport actively participated in two meetings concerning a possible sale of IEC. According to Greg Chapados, who was present at both meetings, Rapoport appeared both physically and mentally fit. Rapoport threatened to veto any sale of IEC which did not "provide him with a substantial profit" and revealed that "he had another party interested in investing in [IEC]."

On June 10, 1987, Rapoport wrote a legally sophisticated letter to other shareholders of IEC, including Whitney and Chapados. In the letter, Rapoport attempts to pressure Whitney and Chapados into buying him out, threatens to force IEC into Chapter 11 bankruptcy should they not, and instructs them (in detail) concerning several legal actions he felt needed to be taken in connection with IEC business. Rapoport references "long, arduous and protracted negotiations" to arrange the sale of his IEC stock with an IEC representative. Rapoport later sent similarly sophisticated telegrams to Chapados, insisting on various rights under IEC corporate bylaws.

Between April and July 1987 Rapoport took part in sixteen telephone calls with Joseph Heintz, a certified public accountant concerning the possible sale of his IEC stock. These discussions "involved complicated financial matters" and "Rapoport was always an active participant." He always appeared to understand "the complicated concepts and ideas being discussed."

Dr. Eric Frankenfeld testified that in July 1987 Mr. Rapoport's blood glucose levels measured at 188, a "decent figure for a diabetic." Frankenfeld, a specialist in diabetes, testified that even readings of 250 or 300 do not indicate mental impairment absent complications which did not at the time appear in Rapoport. Such complications, he added, would have been inconsistent with any activity other than a continuous hospital stay, as opposed to the occasional outpatient visits Rapoport engaged in between July and September 1987. Frankenfeld concluded "... there are plenty of diabetics in the status of Mr. Rapoport who are perfectly capable of performing in society...."

Other evidence appears in the record which supports the trial court's rejection of Rapoport's credibility and therefore his claimed illness. Rapoport and Tiholiz, even during the period of alleged incapacity, "periodically" discussed potential investments. Rapoport had in the past brokered a loan for Tiholiz. In forming his opinion of Rapoport's lack of capacity in July 1987 Tiholiz was unaware of the ongoing IEC related negotiations. Between July 1987 and March 1988, Tiholiz had no face to face visits at all with Rapoport, instead refilling his prescriptions over the phone.

Between June 19 and July 10 or 11, 1987, Rapoport and his wife took a motor vacation, criss-crossing Colorado four times and returning but a few days before service of process. Finally, Rapoport's wife is employed in a medical office and when Rapoport undisputedly became seriously ill in

---

**2.** Dr. Eric Frankenfeld defined "obtunded" as meaning "the patient is staring blankly or is virtually asleep."

June 1988 she recognized that his condition was severe and urged Rapoport to get medical attention.

The superior court denied Rapoport's Civil Rule 60(b)(1) motion, reasoning:

> [F]rankly, the court does not believe that Mr. Rapoport was disabled during the period of time.... The court has to believe that someone of the level of Mr. Rapoport's activities, even assuming he was out of it when the mail was handed to him, if it was thrown in a box, at some point before one year that box would have been looked at, should have been looked at....

## II. DISCUSSION

Denial of a motion to vacate a default judgment under Civil Rule 60(b)(1) will only be "overturned if the trial court abuses its discretion, *Gravel v. Alaskan Village, Inc.*, 423 P.2d 273, 277 (Alaska 1967), *i.e.*, if we are 'left with the definite and firm conviction on the whole record that the trial judge has made a mistake.' *Corso v. Comm'r of Education*, 563 P.2d 246, 248 (Alaska 1977) (footnote omitted)." *Gregor v. Hodges*, 612 P.2d 1008, 1010 (Alaska 1980) (per curiam).

■ "A party who moves to vacate a default judgment under Civil Rule 60(b) has the burden of establishing his entitlement to relief under that rule." *Markland*

*v. City of Fairbanks*, 513 P.2d 658, 660 (Alaska 1973). To set aside a default judgment under the "neglect" provision of Civil Rule 60(b)(1), Rapoport must therefore prove "excusable neglect." [3] Genuine and severe medical disability generally suffices as excusable neglect. *See Gregor*, 612 P.2d at 1010.

■ Thus, in order to reverse the trial court, we must be left with a "definite and firm conviction of error" from the trial court's finding that Rapoport's claims of disability lacked credibility, despite considerable evidence of facts and activities inconsistent with a credible claim.[4] Given Rapoport's knowing receipt of certified mail as demonstrated by his signature, his knowing inquiries (and acrimonious correspondence) regarding IEC before and after service,[5] his numerous complex business dealings during the period of alleged incapacity and lucid participation therein and his own doctor's testimony to Rapoport's intermittent *competence*, we are not left with a "definite and firm conviction of error."

AFFIRMED.

MATTHEWS, Chief Justice, dissenting.

A movant should prevail on a Civil Rule 60(b)[1] motion to set aside a default judgment when he satisfies one of the grounds listed in Civil Rule 60(b) and sets out a

---

3. We assume for the sake of argument that Rapoport met his additional burden to demonstrate a meritorious defense to Tesoro's claim. *See Hertz v. Berzanske*, 704 P.2d 767, 772 (Alaska 1985). We further assume that Tesoro would suffer minimal prejudice if the default judgment were vacated, and that the size of the judgment is a factor which favors trial. *Hertz*, 704 P.2d at 773. However, we note there is no indication in the record or in Appellant's Brief that Tesoro knew of but did not timely notify Rapoport's counsel of Tesoro's intent to seek entry of default judgment. *See, e.g., Kenai Peninsula Borough v. English Bay Village Corp.*, 781 P.2d 6, 8 n. 2 (Alaska 1989) and cases cited.

4. *Compare Gregor v. Hodges*, 612 P.2d at 1010 (reasonably prompt response by 60–year old widow bedridden and sedated when served; delay excused) *with Markland v. City of Fairbanks*, 513 P.2d at 659 (no explanation for 8–month delay; delay unexcused). The dissent seeks to

re-evaluate the trial court's determination of the credibility of Rapoport's claim despite the considerable evidence supporting its decision. One significant difference between *Gregor* and the present case is the considerable evidence suggesting exaggeration of any disability.

5. *See Daou v. Harris*, 139 Ariz. 353, 678 P.2d 934, 941 (1984) (whether headaches caused excusable memory loss held doubtful given defendant's evident competence during period in question).

1. Alaska Civil Rule 60 states in relevant part:
   (b) *Mistakes—Inadvertence—Excusable Neglect—Newly Discovered Evidence—Fraud—Etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
   (1) mistake, inadvertence, surprise or excusable neglect;....

meritorious defense.[2] Here, these conditions are satisfied and, in my view, the default judgment should have been set aside.

First, Rapoport has satisfied one of the grounds listed in Civil Rule 60(b) by establishing a credible case of excusable neglect. Rapoport claims to have been suffering from a degenerating diabetic condition and mental depression aggravated by injuries sustained in an automobile accident. The testimony of his physician, Dr. Tiholiz, supports these claims and raises a substantial doubt as to whether Rapoport was physically and mentally capable of a reasonable response to the claims brought against him. At best, Rapoport had sporadic occasions of competence. In my view, one whose competence is only intermittent and unpredictable has a genuine and severe medical disability which may serve to establish excusable neglect.

Second, Rapoport has alleged a meritorious defense to the substance of Tesoro's claim. Rapoport asserts that a written agreement among Chapados, IEC, and Tesoro was entered into on August 11, 1987. He argues that this agreement provides several defenses, including accord and satisfaction, release, illegality and fraud.

Further, several equitable factors favor setting aside the judgment. Tesoro will litigate the same issues involved in this case against a co-guarantor, Hayes, in a companion case.[3] Since the same issues will be fully litigated in that case, setting aside the present judgment will probably not significantly add to Tesoro's litigation burden, nor will it increase the work of the superior court.

Moreover, Rapoport will suffer total judgments in excess of $1.7 million as a result of the default.[4] If his defense is truly meritorious, this will be a devastating sanction for his neglect. As we stated in *Hertz*, concerning a default judgment of $436,319.43, "[u]nless there are intervening equities, a controversy concerning damages of this magnitude should be resolved on its merits whenever possible." 704 P.2d at 773.

Finally, there were alternatives less harsh than a default judgment that would have sufficiently protected Tesoro's rights. Conditions could have been imposed to protect the judgment lien that Tesoro evidently has obtained in California, and Rapoport could be required to pay Tesoro's costs in connection with obtaining and defending the default judgment. Judge Savell recognized that these equitable alternatives could be fashioned in the event that this court were to set aside the default judgment.

In sum, in my view, Rapoport has sufficiently established excusable neglect and a meritorious defense to warrant relief under Civil Rule 60(b), and equitable factors support such a result. Therefore, I would set aside the default judgment, on conditions to be set and supervised by the trial judge.

---

**2.** See *Hertz v. Berzanske*, 704 P.2d at 771–772; *Cleary Diving Service, Inc. v. Thomas*, 688 P.2d 940, 943 (Alaska 1984); *Gregor v. Hodges*, 612 P.2d at 1009–1010.

**3.** A default judgment was entered in this case in the amount of $375,530.71 by Judge Savell. Judge Hodges, relying on Judge Savell's holding, also denied Rapoport's motion to set aside a default judgment in the companion case on the grounds of collateral estoppel. See *Tesoro Alaska Petroleum Co. v. Interior Energy Corp.*, Case No. 4FA–87–1177 Civil. That judgment totalled $1,332,268.62. Judge Hodges noted, however, that "[e]xcept for the collateral estoppel issue as

to the disability, this court would conclude that sufficient evidence has been raised as to Rapoport's disability. The court would exercise its discretion in finding there are sufficient facts presented by Rapoport to conclude there may be a meritorious defense. The court concludes there is no prejudice to plaintiff, since these issues are in full litigation between plaintiff and defendant Hayes. Therefore, except for the collateral estoppel issue, [this court] would set aside the default judgment."

**4.** See footnote 3, *supra*.