*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DAVID E. SANDBERG, | ) | |
| | ) | Supreme Court No. S-14759 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-08-02842 CI |
| v. | ) | |
| | ) | O P I N I O N |
| BRIANNA E. SANDBERG, | ) | |
| (n/k/a Brianna E. Whitney) | ) | No. 6889 – April 11, 2014 |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Robert B. Downes, Judge.

Appearances: Thomas R. Wickwire, Fairbanks, for Appellant. No appearance by Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

## I. INTRODUCTION

The superior court granted Brianna Sandberg's Alaska Civil Rule 60(b)(6) motion to vacate a divorce settlement agreement, valued and divided the couple's property, and ordered David Sandberg to pay Brianna's attorney's fees. In granting Brianna's Rule 60(b)(6) motion, the superior court found that Brianna was mistaken in her belief at the time of the parties' settlement agreement that the marital home was David's property. David appeals.

No facts in this record support the superior court's finding that Brianna mistakenly believed she held no ownership interest in the couple's marital home. We therefore reverse and remand the case for the superior court's reconsideration of Brianna's Rule 60(b)(6) motion. We address David's arguments on the valuation and division of property with the understanding that these arguments may be mooted by the superior court's resolution of Brianna's Rule 60(b)(6) motion on remand. Because we reverse the court's ruling on Brianna's Rule 60(b) motion, we also vacate the superior court's attorney's fee award.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

David Sandberg and Brianna Sandberg (now known as Brianna Whitney) married in 2002 in Fairbanks. The parties have two children, born in 2004 and 2006. David also adopted Brianna's son from a previous relationship. Throughout the marriage David was the primary income earner, while Brianna cared for the children at home.

#### 1.     The Blackberry Drive house

Before the parties were married, David began constructing a house on a 1.5-acre lot on Blackberry Drive in Fairbanks. David had an agreement with the former lot owner whereby he acquired one lot and purchased an adjacent 1.5-acre lot. At the time of their marriage in 2002, the house was roofless and not yet inhabitable. David continued to work on the house throughout the parties' marriage. David did the majority of the work involved in building the house, but he acknowledged that "there was some marital effort put into" the house, and Brianna also testified that she did some work on the house both in its construction and decoration. In October 2006 the parties moved into the house, which was then livable although not fully complete.

The parties continued to live in the house until they separated and Brianna left the home in late 2008. After their separation, David continued to make

improvements and repairs. He estimated that his additional, post-divorce work had increased the value of the home by approximately $19,000. David also continued to pay property taxes after the divorce.

In May 2011, during the course of the Rule 60(b) litigation, the court granted Brianna's motion for possession of the marital home. At that time the water system needed repair. At trial in August 2011, Brianna and her fiancé testified that they were working on that repair.

## 2.    Brianna's mental and physical health

Brianna has suffered from depression since at least 2004, about six months after the birth of her second child, and she took prescribed medication for this condition. In spring 2008 she was under a lot of stress because her relationship with David was strained and because a close friend had recently committed suicide. Around this same time, she began experiencing a variety of physical ailments, including abdominal pain, nausea, vomiting, and headaches. Brianna had her gallbladder removed in May 2008, and she underwent a partial thyroidectomy in July 2008. In addition, she suffered from a "diffuse rash" and was diagnosed with cutaneous mastocytosis. Despite this diagnosis, her medical providers were not able to determine the source of all of her symptoms, nor were they able to develop an effective treatment plan to relieve those symptoms. In October 2008 Brianna was referred to the University of Washington Medical Center in Seattle for a bone marrow biopsy, the results of which were inconclusive.

Brianna's illnesses and the uncertainty of her diagnosis caused her significant anxiety. She testified that after her October trip to Seattle did not result in a clear diagnosis, she "spiraled more and more into . . . feeling really depressed, feeling really hopeless, feeling really scared."

### 3. Brianna's second trip to Seattle and return to Fairbanks

In early November 2008 Brianna made a second visit to Seattle. Brianna testified that the purpose of the visit was to "find some better medical care and . . . just take a break for [her] mind for a week or two" to relieve the stress and anxiety resulting from her illness and uncertain diagnosis. Before she left she told David that she wanted a legal separation and perhaps also wanted to see other people. She arranged to stay in Seattle with a man she had met during her first visit in October with whom she had been corresponding. Shortly after Brianna arrived in Seattle, she received divorce papers from David. She quickly ran out of the money she had brought with her and did not have access to any other marital funds.[1] Brianna testified that she felt stuck in Seattle because she had no money and did not have a return ticket home. She remained in Seattle for four months; she testified that during this time "I got so sick, I was so scared, I didn't know when I'd talk to my kids again and I just couldn't function at all."

In March 2009 Brianna returned to Fairbanks. David and the children moved out of the house before Brianna arrived and she moved in. Brianna testified that she had difficulty living at the house alone because she did not have a vehicle, she lacked sufficient heating fuel, and she quickly ran out of food. Further, upon her return to Fairbanks she felt she had "no support system anymore because [she had] been completely ostracized" from family and friends.

In mid-March the superior court granted David's motion for temporary orders, awarding David primary physical custody of the children and sole use of the family home. As a result Brianna departed the home in late March. Before doing so she negotiated with David's attorney, John J. Connors, to receive a $3,000 advance on the

---

[1] In January 2009 Superior Court Judge Robert B. Downes ordered that David send two interim payments to Brianna in the amounts of $300 and $400.

divorce settlement, as well as possession of the parties' Ford Expedition vehicle. After leaving the home, she used $500 of the $3,000 advance to pay for "a few months [of] rent with a roommate."

Brianna visited a health clinic in March 2009 with a variety of symptoms apparently caused by a flare-up of her cutaneous mastocytosis, but by April her health had improved and she found a job as a waitress. However, by June she had to leave her job because she "started to get really sick" again and had been missing days at work.

On May 28, 2009, Brianna admitted herself to Fairbanks Memorial Hospital for four days due to anxiety. Brianna testified that throughout the summer of 2009, after leaving her job at the restaurant, she "was basically homeless," staying with friends, in her car, or at a rescue mission.

**B.    Proceedings**

**1.    The initial settlement agreement**

David filed for divorce in November 2008. Between January and March 2009, Connors prepared a first draft of a settlement agreement between David and Brianna. When she returned to Fairbanks in March, Brianna read the draft agreement and asked that several modifications be made. Connors prepared a second draft, and again Brianna requested changes. When the parties reached the third and final draft, Brianna sat in Connors's office and read through the agreement before signing it. Brianna testified that throughout the drafting and negotiation process she did not consult with an attorney of her own.

According to Connors, during the drafting and negotiations Brianna's demands "primarily focused on obtaining money quickly," and she proposed that she receive David's interest in his 401(k) retirement account. He stated that Brianna "was adamant about what she wanted and [that she] needed the money as soon as possible," and she "would not sign the agreement unless it met her requests." Further, Connors

stated that he "never had a suggestion or indication that [Brianna] did not understand the consequences of the agreement she participated in drafting."

Sandra Mayo, Connors's paralegal, testified that she spoke with Brianna over the phone and at Connors's office several times to discuss the settlement agreement. During the meetings at the office, Brianna "was always clear-eyed," "very presentable," and "knew what she had wanted." In particular, Brianna was "adamant" that the agreement not require her to pay child support. Mayo also testified that Brianna "believed that she would get [David's] retirement [money] and [David] would get the house." Brianna "didn't care about what the house was[,] . . . she wanted cash so she [could] live and go to school, [and do] what she needed to do."

David testified that during the negotiations he never claimed the house was his separate premarital property. He testified that he and Brianna "talked over and over about the house and . . . in her opinion, it was something that [he] should keep because at the time, she [wanted] to move on." Further, David testified that Brianna told him that "you should have the house because you have the kids, [and] it would be good for the children to stay in the house because that's what they're used to."

Brianna testified that the parties never discussed the legal status of the house during their negotiations. She testified that although neither David nor his attorney ever told her that the house was David's premarital property, David "insinuated it throughout the entire paperwork." She also testified that, at the time of the settlement, she "knew [the house] was marital property because I knew we built it together, but . . . I think David made it sound like it was his separate property." Further, at the time of the settlement she had "no idea" whether the fact that the house was titled only in David's name had any effect on its legal status.

Brianna signed the settlement agreement on May 15, 2009; David signed it on May 26. The agreement stated that David would be awarded the house, which it

identified as "a residence solely titled in David's name, valued at approximately $105,000."[2] David was also awarded a 1993 Ford truck, a 1999 Chrysler van,[3] and a snowmobile. Brianna was awarded a 1998 Ford Expedition and David's 401(k) retirement balance as of December 2008 (the approximate date of their separation), an amount of "approximately $32,936.18."[4] The settlement agreement stated that the 401(k) payment "is specifically in exchange for [Brianna's] knowing waiver of any and all claims against the residence/real property, any marital property described [in the agreement] and in full satisfaction of Brianna's claim for spousal support." The settlement provided that David would pay Brianna's outstanding medical bills up to an amount of $6,470. The parties agreed to share legal custody of the three children, with David having physical custody during the school year. There was no provision for child support, but David was to receive the federal income tax deduction for all three children, as well as apply for and manage the children's Alaska Permanent Fund Dividend checks.

On August 26, 2009, the parties appeared before Standing Master Alicemary L. Rasley. David was represented by counsel; Brianna proceeded pro se. David's attorney, addressing David, summarized the parties' settlement agreement as follows: "You're going to have the real estate — that is, your house and also the vacant lot that you owned before marriage and [Brianna is] going to get . . . the liquid asset

---

[2] David testified that the parties did not have the house appraised and that he arrived at the stated value of $105,000 by taking "a stab at it, really . . . based on some of the houses around us."

[3] David later gave the Chrysler van to Brianna.

[4] Brianna testified that after taxes and after deducting her portion of a marital debt on the parties' van and the $3,000 advance she had earlier received, she ultimately received a payment of "approximately $22,000." In the court's final order, it valued the payment at $32,936.00 or $24,523.69 net received.

which is your 401(k)." The parties agreed that the court should adopt the marital property and debt agreement. A decree of divorce was issued on August 31, 2009.

Brianna testified at a later hearing on her Rule 60(b) motion that she received the settlement check in October 2009 and used the money to pay attorney's fees (for her Rule 60(b) attorney), as well as to pay back debts she had incurred over the previous months.

### 2. Brianna's Rule 60(b) motion

In January 2010 Brianna, now represented by counsel, submitted a Rule 60(b) motion to vacate the parties' settlement agreement. She argued that when she returned to Fairbanks in March 2009 she was very ill and had no source of income or support. She alleged that when she signed the settlement agreement two months later, she "was still suffering from deteriorated health, was mentally unable to comprehend what she was signing, and was no longer able to hold out for an equitable division of property." Further, she argued that "[r]eview of the settlement agreement indicates that [David] received all of the marital assets, including the home and land . . . while [Brianna] received an inequitable award of a portion of [David's] 401K." Brianna argued that she should be granted relief from the settlement agreement under Rule 60(b)(1) because of her own "mistake or inadvertence"; under Rule 60(b)(3) because of David's "misrepresentation"; or under Rule 60(b)(6) because "the court is granted the authority to vacate judgments whenever such action is necessary to accomplish justice."

In his opposition to Brianna's Rule 60(b) motion, David argued that the agreement was fair to Brianna, that she actively participated in the negotiations of the agreement, and that she was fully cognizant of the terms of the agreement.

Beginning in June 2010, the superior court held a series of hearings on Brianna's Rule 60(b) motion, during which the court heard testimony concerning the circumstances leading up to the parties' settlement agreement. Both parties were

represented by counsel. In March 2011 the court issued an order granting Brianna's Rule 60(b) motion and vacating the settlement agreement. The court found that Brianna "may be" entitled to relief under 60(b)(1), but that "[e]ven if Brianna was not entitled to relief under Civil Rule 60(b)(1), the extraordinary circumstances of this case entitle Brianna to relief . . . under Civil Rule 60(b)(6)."[5]

First, with respect to Rule 60(b)(1), the superior court found that Brianna was mistaken in her belief that "the parties' marital home was David's separate property." As a result of this mistake, "the settlement agreement did not equally divide the assets and debts of the marriage."

With respect to Rule 60(b)(6), the court found that "[a]lthough not all of the equitable factors need be present for the court [to] set aside a final property division, all factors are found here." First, the court found that "the fundamental, underlying assumption of the dissolution agreement has been destroyed" because when the parties signed the agreement "at least Brianna believed that she held no interest in the house," when in fact the house had been "transmuted into marital property during the parties' marriage." Second, the agreement was "poorly thought out by Brianna" because at the time of the agreement she "desperately needed money from the settlement to provide for her immediate basic needs. She was homeless and unemployed, physically and emotionally unstable, and with limited financial and emotional support." Third, the agreement "was reached without the benefit of counsel" on Brianna's side. Fourth, "the property in dispute [the house] was the parties' principal asset." The court commented

---

[5] The court found that Brianna was not entitled to relief under Rule 60(b)(3) because "[a]lthough David held an incredible amount of leverage during negotiation and took advantage of Brianna's hardship, his actions alone did not constitute fraud or misrepresentation." Brianna does not appeal this finding.

that it "grants Brianna's Rule 60(b) motion with reluctance[,] but the circumstances of the settlement are severe in respect to Brianna's situation."

David filed a motion to reconsider that the court denied in April 2011. In May 2011 the court granted Brianna's motion for possession of the marital home during the pendency of the action.

### 3. The trial and final order

Following the court's vacating of the settlement agreement, the parties were unable to reach a new agreement concerning the property division. The court held a three-day trial in August 2011, during which it heard additional testimony concerning Brianna's health and the status of the home, as well as testimony concerning the parties' relative contributions to the maintenance of the home following the separation. In March 2012 the court issued findings of fact and a final order regarding the property distribution, incorporating by reference its previous order granting the Rule 60(b) motion. The court "conclude[d] that [Brianna's] earning capacity and her current personal situation require[] an unequal division of property, in lieu of alimony."

The court determined that the house was the parties' principal asset and ordered that the house should be sold to a third party, with David receiving 40 percent of the net proceeds and Brianna 60 percent.[6] Further, the court found that "the parties have both done post-separation work on the house, and that any work done on the house that augmented the value of the house . . . will be left untouched by the court because of the difficulty in figuring out the proportionate shares of the work and the valuation

---

[6] The court found that the "value of this property is the subject of some speculation, but because the court concludes it should be sold, the value will be determined by the sale price. It appears it is worth about $120,000 to $150,000, as that was the value at the time of the trial (by virtue of the estimates of the parties and the other evidence)."

(assuming [Brianna] was able to repair the septic system)." The court also found that the "benefit [David] received from living in the house [following the separation] balances against the amounts he put into improving the house when he lived in the house."

Finally, the court ordered that "[b]ecause of the disparity of the incomes of the parties, [David] will pay [Brianna] the sum of $7,000.00 towards her attorney's fees, which are represented to be approximately $25,000.00."

David appeals, arguing that Brianna's agreement to the property settlement was voluntary and fair and that the court erred both in its property valuation and in its award of attorney's fees. Brianna has not participated in this appeal.

## III.    STANDARD OF REVIEW

We review a trial court's grant of a Rule 60(b) motion for an abuse of discretion.[7] We review the factual findings underlying the superior court's decision for clear error.[8] "The clearly erroneous standard, as we apply it, means something more than merely showing it is more probable than not that the trial judge was mistaken. We must be convinced, in a definite and firm way, that a mistake has been committed."[9]

---

[7]    *Hopper v. Hopper*, 171 P.3d 124, 128 (Alaska 2007) (citing *McGee v. McGee*, 974 P.2d 983, 987 (Alaska 1999)). The one exception is our review of a Rule 60(b)(4) motion, which we review de novo, *Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 884 (Alaska 2013); however, there is no Rule 60(b)(4) issue before us on appeal.

[8]    *Wilson v. Wilson*, 271 P.3d 1098, 1102 (Alaska 2012) ("Although a superior court's decision is reviewed . . . for abuse of discretion, the court should make appropriate findings of fact supporting its decision, which are reviewed . . . for clear error.").

[9]    *Alaska Foods, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 482 P.2d 842, 848 (Alaska 1971).

The superior court exercises broad discretion in property division cases.[10] When faced with a marriage of long duration where parties have commingled assets, property division in divorce proceedings consists of three steps: (1) characterizing the property available for distribution, (2) valuing the property, and (3) equitably allocating those assets between the parties.[11] If the superior court makes legal determinations on the character of the property available for distribution, we review those legal determinations de novo, using our independent judgment.[12] "Otherwise, we review a trial court's determinations as to property available for distribution under the abuse of discretion standard."[13] The trial court's valuation of the available property is a question of fact; we upset the court's factual findings on appeal only if there is clear error.[14] Finally, "[w]e review a trial court's equitable division of marital property under the abuse of discretion standard; we will not disturb it unless the result is clearly unjust."[15]

---

[10] AS 25.24.160(a)(4); *Moffitt v. Moffitt*, 749 P.2d 343, 346 (Alaska 1988).

[11] *Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013).

[12] *Id.*; *see also Lewis v. Lewis*, 785 P.2d 550, 555 (Alaska 1990) ("Whether or not a particular piece of property is a marital or premarital asset is in large part a legal determination, involving the interpretation of AS [25.24.160(a)(4) ], and applying legal principles to the facts of the case." (citations and internal quotation marks omitted)).

[13] *Doyle v. Doyle*, 815 P.2d 336, 368 (Alaska 1991) (citing *Moffitt*, 749 P.2d at 346).

[14] *Beals*, 303 P.3d at 459.

[15] *Williams v. Williams*, 252 P.3d 998, 1004 (Alaska 2011) (citing *Walker v. Walker*, 151 P.3d 444, 447 (Alaska 2007)).

## IV.  DISCUSSION

### A.   The Superior Court's Factual Findings Underlying The Grant Of Brianna's Rule 60(b) Motion Were Clearly Erroneous.

The superior court found that Brianna "may" be entitled to relief under Rule 60(b)(1) and that, even if she was not so entitled, she was entitled to relief under Rule 60(b)(6).[16] David argues that Brianna's agreement to the property settlement was "knowing and voluntary" and thus she was not entitled to relief under any of the subsections of Rule 60(b).

Rule 60(b) allows relief from a judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise or excusable neglect;
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
>
> (6) any other reason justifying relief from the operation of the judgment.

---

[16]   Case law dictates that "[c]lause (6) and the first five clauses of Rule 60(b) . . . are mutually exclusive" such that "[r]elief under clause (6) is not available unless the other clauses are inapplicable." *O'Link v. O'Link*, 632 P.2d 225, 229 (Alaska 1981).

" 'Rule 60(b), in its entirety, attempts to preserve the delicate balance between the conflicting principles that litigation be brought to an end and that justice be done in light of all the facts.' "[17]  The rule, however, "does not allow trial courts to indulge a party's discontent over the effects of its bargain.  Accordingly, when a party makes a deliberate, strategic choice to settle[,] she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect."[18]

The two subsections at issue in the instant case are (1) and (6).[19]  We have described the distinction between these two subsections as follows:

> Alaska case law does not clearly pinpoint which claims for relief are properly cognizable under Rule 60(b)(1). However, it appears that when a party is seeking relief due to the *movant's* mistake or neglect the claim falls under Rule 60(b)(1); but when the parties are *mutually* mistaken the claim falls under Rule 60(b)(6).[20]

Here, the trial court based its Rule 60(b)(1) determination on its finding that Brianna made a unilateral mistake.  We begin by examining what constitutes "mistake, inadvertence, surprise or excusable neglect" under this subsection.

---

[17]  *Lowe v. Lowe*, 817 P.2d 453, 459 (Alaska 1991) (quoting *Livingston v. Livingston*, 572 P.2d 79, 85 (Alaska 1977)).

[18]  *Dickerson v. Williams*, 956 P.2d 458, 466 (Alaska 1998) (quoting *Andrulonis v. United States*, 26 F.3d 1224, 1235 (2d Cir.1994)) (internal quotation marks and alterations omitted).

[19]  As noted above, Brianna initially also sought relief under subsection (3), claiming that David defrauded her, but the superior court found that David's actions "did not constitute fraud or misrepresentation," and Brianna does not appeal this finding.

[20]  *Williams v. Crawford*, 982 P.2d 250, 255 (Alaska 1999) (emphasis in original) (citations omitted).

### 1.    Rule 60(b)(1)

Our decisions, "like those of [our] federal counterparts, have neither expressly distinguished the separate grounds for relief under Rule 60(b)(1)[,] nor set forth tests for them."[21]  "We have stressed, though, that to gain relief for excusable neglect a party must show not only 'neglect,' but a valid 'excuse' therefor."[22]  We have noted that "deliberate . . . conduct is never mistake or excusable neglect."[23]  Finally, we will not find a 'mistake' where no facts in the record support a party's claim of lack of understanding.[24]

Here, the superior court examined Brianna's Rule 60(b)(1) claims under the rubric of "mistake," and found that Brianna mistakenly believed the parties' house was David's separate property.[25]  The court found that Brianna's mistake resulted in a

---

[21]    *Dickerson*, 956 P.2d at 465.

[22]    *Id.*

[23]    *Id.* (quoting 12 JAMES T. MCLAUGHLIN ET AL., MOORE'S FEDERAL PRACTICE ¶ 60.41(1)(c)(i), at 60-88 (3d ed. 1997)).

[24]    *See, e.g.*, *Dickerson v. Goodman*, 161 P.3d 1205, 1207-08 (Alaska 2007).

[25]    Brianna's emphasis in her 60(b) motion on her "deteriorated health" may also suggest a claim under the rubric of "excusable neglect."  In order to suffice as excusable neglect, a medical disability must both cause the neglect and be "genuine and severe."  *Rapoport v. Tesoro Alaska Petroleum Co.*, 790 P.2d 1374, 1377 (Alaska 1990).  In *Rapoport*, we concluded that a claim of medical disability did not constitute excusable neglect where the party, during the period of claimed disability, corresponded with the opposing party, and participated in complex business dealings.  *Id.*

Here, Brianna corresponded with David's attorney, Connors, during the course of her medical troubles, from the moment she negotiated a $3,000 advance on the divorce settlement to her final settlement award.  She participated in and demanded two re-drafts of the original settlement agreement from Connors.  When the parties reached

(continued...)

settlement agreement that "did not equally divide the assets and debts of the marriage." The court explained that Brianna believed the house belonged to David because "David . . . argued that the house was premarital property due to its location." The court cited an affidavit David submitted in February 2010 in response to Brianna's Rule 60(b) motion, in which David stated that he "owned the real property that was awarded to me prior to my marriage to [Brianna]."

At most, this statement, made months after the settlement, is evidence of what David believed about the house. The court did not cite, and we have been unable to discover in the record, *any* evidence that Brianna believed the house belonged solely to David. On the contrary, Brianna testified at the time of the settlement that she "*knew [the house] was marital property*" because she knew the couple "built it together." (Emphasis added.) Further, Brianna testified she and David never discussed whether the house was marital property and that she had "no idea" about whether the house's title had any effect on its legal status. David testified that he and Brianna "talked over and over about the house and . . . in her opinion, it was something that I should keep because at the time, she was wanting to move on." David also testified Brianna told him "you should have the house because you have the kids, [and] it would be good for the children to stay in the house because that's what they're used to." Similarly, Sandra Mayo testified Brianna "didn't care about what the house was[,] but she wanted cash so she [could] live and go to school, [and do] what she needed to do." Finally, when Brianna signed the settlement agreement, she did so having read the provision stating that the

---

**25**(...continued)
the third and final draft, Brianna sat in Connors's office and read through the agreement before signing it. Paralegal Sandra Mayo testified Brianna "was always clear-eyed," "very presentable," and "knew what she had wanted" during the meetings at the office. In particular, Brianna was "adamant" that the agreement not require her to pay child support.

cash payment she received was "specifically in exchange for [Brianna's] knowing waiver of any and all claims against the residence/real property."

In short, there is no evidence in the record that Brianna believed the house belonged only to David at the time of the settlement. By all accounts Brianna was either fully aware that she held an interest in the house, was not entirely certain about the status of the house, or simply did not care about the house's marital or non-marital status because her primary goal in the settlement was to obtain up-front, liquid assets. Having reviewed the record before us, we must conclude that the court's determination that Brianna "may" be entitled to relief under Rule 60(b)(1) because she mistakenly believed "that the parties' marital home was David's separate property" was based on a clearly erroneous factual finding.

### 2. Rule 60(b)(6)

Rule 60(b)(6) provides for relief for "any other reason justifying relief from the operation of the judgment." The clause is reserved for "extraordinary circumstances" that are "not covered by the preceding clauses."[26] We have stated that "Rule 60(b) in general, and clause (6) in particular, should be liberally construed to enable courts to vacate judgments whenever such action is necessary to accomplish justice."[27] We have also warned, however, that "[t]he broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated, and deliberate choices he has made. A party remains under a duty to take legal steps to protect his own interests."[28] In short, "in reaching the conclusion that a party is entitled to relief from judgment under

---

[26] *O'Link v. O'Link*, 632 P.2d 225, 229 (Alaska 1981) (citations omitted).

[27] *Id.* at 230 (citations omitted).

[28] *Id.* at 229-30 (quoting 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2864, at 213-14 (1973)).

Rule 60(b)(6), we balance the interest in the finality of judgments against the interest in granting relief from judgment when justice so requires."[29]

In *Foster v. Foster*, we affirmed a grant of relief under Rule 60(b)(6) from a property division when: (1) the fundamental, underlying assumption of the parties' dissolution agreement had been destroyed; (2) the parties' property division was poorly thought out; (3) the property division was reached without the benefit of counsel; and (4) the asset in controversy was the parties' principal asset.[30] Following *Foster*, we have continued to apply these four factors, but we have "never held that all of these factors are essential for a finding of 'extraordinary circumstances.' Rule 60(b)(6) is, after all, a catch-all provision . . . ."[31] Accordingly, the four factors first enunciated in *Foster* "are not strictly necessary conditions but, rather, are particular instantiations of the equitable factors required to overcome the principle that, at some point, litigation must be brought to an end."[32] Trial courts should use these factors when appropriate, but should also bear in mind the flexible nature of Rule 60(b)(6), keeping in mind that "[t]he broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated, and

---

[29]     *Clauson v. Clauson*, 831 P.2d 1257, 1261 (Alaska 1992) (alterations omitted) (quoting *Norman v. Nichiro Gyogyo Kaisha, Ltd.*, 761 P.2d 713, 717 (Alaska 1988)).

[30]     684 P.2d 869, 872 (Alaska 1984).

[31]     *Clauson*, 831 P.2d at 1260-61.

[32]     *Id*. (quoting *Lowe v. Lowe*, 817 P.2d 453, 459 (Alaska 1991)) (internal quotation marks and alterations omitted).

deliberate choices he has made"[33] and that the clause is reserved for "extraordinary circumstances."[34]

Here, the superior court found the facts of this case met all four *Foster* factors. With respect to the first factor, the court found that "the fundamental, underlying assumption of the dissolution agreement has been destroyed" because when the parties signed the agreement "at least Brianna believed that she held no interest in the house," when in fact the house had been "transmuted into marital property during the parties' marriage." As discussed above, it was clear error for the court to find that Brianna believed the house was David's separate property, as there is no evidence in the record to support this finding. Again, Brianna herself testified that at the time of the settlement she knew the couple "built [the house] together" and David testified that he and Brianna "talked over and over about the house" and Brianna told David to keep it because she wanted to move on. Brianna also thought about the needs of her children at the time, knew David had custody of them, and wanted David to have the house in part to provide for the needs of the children. This record reveals, simply, that Brianna sought a settlement agreement that gave her readily-available liquid assets in the form of David's 401(k) asset and David's payment of Brianna's outstanding medical bills. As previously noted, Rule 60(b)(6) "does not allow trial courts to indulge a party's discontent over the effects of its bargain,"[35] and "when a party makes a deliberate, strategic choice to settle[,]"

---

[33] *O'Link*, 632 P.2d at 229-30 (quoting 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2864, at 213-14 (1973)).

[34] *Id*. at 230.

[35] *Dickerson v. Williams*, 956 P.2d 458, 466 (Alaska 1998) (quoting *Andrulonis v. United States*, 26 F.3d 1224, 1235 (2d Cir. 1994)) (internal quotation marks and alterations omitted).

she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect."[36]

Because there is no evidence that Brianna believed the house was David's separate property, there is also no evidence such a belief was a fundamental, underlying assumption of the parties' agreement. The superior court's analysis of Brianna's motion under Rule 60(b)(6), then, was based on a clearly erroneous factual finding. Because the superior court's decision granting relief to Brianna under Rule 60(b)(1) and 60(b)(6) rested on the same clearly erroneous factual conclusion, we reverse the court's Rule 60(b) order and remand the case for the court to reconsider Brianna's Rule 60(b) motion consistent with our opinion.

## B.    Valuation Of The Marital Property

David argues the court made several errors in its valuation and division of the property in its final order. First, he argues the court "should have valued [the home] as of [the parties'] agreed separation date, November 2008, which would have separated out the increase in value attributable to improvements David made since the divorce, to comport with the rule that, post-divorce, the parties['] financial fortunes, or misfortunes, are to be separate." Second, David argues the court erred because it did not "include the appreciation in David's Retirement fund, from which [Brianna's] cash distribution came, when it redistributed the marital property." David argues that the fund should be valued at $37,583.45, rather than $30,523.39, to reflect an appreciation of 23.13% between 2009 and 2011. Because these arguments were briefed, we will address them to provide guidance to the trial court — although we recognize that they may be mooted by the trial court's resolution of Brianna's Rule 60(b) motion on remand.

---

[36]    *Id.*

### 1.     The valuation of the home

In *Ogard v. Ogard* we established that "[o]rdinarily . . . the date of valuation . . . should be as close as practicable to the date of trial."[37]  We also noted, however, that "there may be special situations in which the date of separation is more appropriate," including, for example, when "the value of marital property increases due to the efforts of one of the spouses."[38]

Here the superior court, in accord with the general rule set forth in *Ogard*, determined the value of the home at the time of trial and estimated that it was worth between $120,000 and $150,000.  The court left the exact amount to be determined by the sale price.  The court acknowledged that David made improvements to the house, but found that "the parties have both done post-separation work on the house, and that any work done on the house that augmented the value of the house . . . will be left untouched by the court because of the difficulty in figuring out the proportionate shares of the work and the valuation (assuming [Brianna] was able to repair the septic system)."  The court also found that the "benefit [David] received from living in the house balances against the amounts he put into improving the house when he lived in the house."

The superior court correctly applied the general principles of valuation, but the findings underlying that application are inadequate.  In particular, the court did not explain why it would have been too difficult to determine the value of the proportionate shares of the work both parties performed on the house post-separation.  On remand, if the superior court again grants Brianna Rule 60(b) relief and reinstates its prior property division, the court must reconsider the relative value of the repairs and improvements each party made to the home post-separation.  If indeed such a valuation proves too

---

[37]     808 P.2d 815, 819 (Alaska 1991).

[38]     *Id.* at 820 (citation omitted).

difficult to determine, the court will be required to provide an explanation of why this is so, such as incomplete records or conflicting testimony.[39]

### 2. The valuation of the parties' rent-free use of the marital premises

"[W]here the use of marital property after separation effectively excludes the other spouse, the rules of cotenancy require payment to the marital estate of the fair market rental value for use of the property."[40] In other words, the court must also consider whether "any benefit . . . [David or Brianna] may have imparted to the marital estate was offset by the benefit [either] received from the estate by living rent-free."[41]

Here the parties separated and Brianna left the home in late 2008. In March 2009 Brianna returned to Fairbanks. David and the children moved out of the house prior to Brianna's arrival and she moved in. In mid-March the superior court granted David's motion for temporary orders, awarding David primary physical custody of the children and sole use of the family home. As a result Brianna departed the home in late March 2009. In May 2011 the court granted Brianna's motion for possession of the marital home.

As above, if the superior court grants Brianna Rule 60(b) relief and reinstates its prior property division, the court must also address the relative rental value

---

[39] *See, e.g.*, *Lang v. Lang*, 741 P.2d 1193, 1195 (Alaska 1987) (stating that the trial court "has a duty by sufficiently detailed and explicit findings to give this court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." (quoting *Merrill v. Merrill*, 368 P.2d 546, 548 (Alaska 1962)) (internal quotation marks omitted)).

[40] *Rodriguez v. Rodriguez*, 908 P.2d 1007, 1013 (Alaska 1995) (citing *Wood v. Collins*, 812 P.2d 951, 958 (Alaska 1991)).

[41] *Id.*

of the home post-separation and determine whether there should be any credit or set-off to account for the fact that the parties each lived in the house rent-free.

### 3. The valuation of Brianna's cash distribution

As noted above, in *Ogard* we established that marital property is to be valued at the time of trial or, in some instances, at the time of separation. Here, the value of Brianna's cash distribution was $0 at the time of trial because Brianna had spent the funds by that date. The value of the funds at the time of separation was approximately $32,936.00, or $24,523.69 net received, according to the findings of the superior court. The court chose to value the payment at the time of separation and credit that value against Brianna in the final property division.[42] Thus, of the two options available to the court with respect to the valuation of the cash payment, the court chose the option more favorable to David. Nevertheless, David argues that the court should have pursued a third option whereby the court would value the cash payment by calculating the amount by which the funds would have appreciated had they remained in David's 401(k) account. This approach would involve considerable speculation and is not supported by our case law. The superior court properly avoided such speculation and did not err in its valuation of the 401(k) cash distribution to Brianna.

_____

[42] Typically, a marital asset spent by one party after separation may be recaptured only when that party has wasted or otherwise misused the asset. *See, e.g.*, *Day v. Williams*, 285 P.3d 256, 260 (Alaska 2012). Here there were no findings that Brianna wasted or misused the funds. Nevertheless, in the unusual circumstances presented here — in which an asset was spent after being transferred to one party in a binding settlement agreement that was later confirmed in a final divorce decree — it was not error for the court to recapture the funds and credit them against Brianna.

**C.** **The Superior Court's Award Of Attorney's Fees Must Be Reconsidered on Remand.**

Because we are reversing the superior court's Rule 60(b) order and remanding for further proceedings, the court's award of attorney's fees must also be vacated. The court shall reconsider the issue of attorney's fees in light of its findings on remand.

## V.    CONCLUSION

We REVERSE the superior court's grant of Rule 60(b) motion relief, VACATE its attorney's fee award, and REMAND for further proceedings consistent with this opinion.