NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| CORY R., | ) |
| | ) Supreme Court No. S-18616 |
| Appellant, | ) |
| | ) Superior Court No. 3PA-16-01380 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| BRITTANY R., | ) AND JUDGMENT* |
| | ) |
| Appellee. | ) No. 2012 – February 21, 2024 |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: John J. Sherman, Sherman Law Office, LLC, Anchorage, for Appellant. No appearance by Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I.    INTRODUCTION

A father sought modification of child custody. The mother opposed, arguing that an older child living with the father posed a risk of harm to their younger child. After an evidentiary hearing, the superior court agreed the older child posed a risk of harm and found the older child had not received any treatment that could help mitigate that risk. The court awarded the mother primary physical custody and allowed the father visitation every other weekend. We conclude the evidence supported the

---

\*    Entered under Alaska Appellate Rule 214.

court's finding that the older child presented a risk of harm to the younger child. However, it was clear error to find that the older child had not received any relevant treatment. Because this clearly erroneous finding was controlling and material to the court's custody decision, we vacate the order modifying visitation and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

### A. Facts

Cory R. and Brittany R. married in 2013 and divorced in 2016.[1] They have one child together, Eli, who was born in 2014.

In the parties' divorce decree, the court adopted the parties' agreement for Brittany to have primary physical custody of Eli. The agreement limited Cory's visitation to daytime visits on Saturday and Sunday two out of every three weekends. Soon after their divorce, the parties began to deviate from that visitation schedule. The parties resumed cohabitation in July 2018. After moving in together, they shared physical custody of Eli.

Cory also has a son from a prior relationship, Connor, who was born in 2008. Connor now lives primarily in Cory's home. Beginning in 2019 the Office of Children's Services (OCS) received allegations that Connor had engaged in inappropriate sexual behavior with other children while staying with his mother and other siblings in a different home. OCS received multiple reports involving Connor, including one report in 2021 alleging that Connor may have sexually abused Eli. OCS characterized these reports as "not substantiated."

Cory told OCS in May 2021 that "he [was] aware that when [Connor] was ages 3-7, he messed around with his older brother and kids in the neighborhood." According to OCS, Cory also reported knowing that Connor "introduced the same

---

[1] We use initials in lieu of the parties' last names and pseudonyms for the children to protect the family's privacy.

things" to another sibling. Cory reported to OCS that Eli and Connor were "not left alone at all together" and that Connor was "going to counseling through school." Brittany also reportedly told OCS in May 2021 that Connor was attending counseling.

Cory and Brittany separated again in August 2020. Following their second separation, they continued to share physical custody of Eli, although the schedule varied. Brittany was the primary caregiver and custodian, but Cory regularly cared for Eli after school, on weekends, and on some overnights. This arrangement continued until October 2021.

### B. Proceedings

In September 2021 Cory moved to modify custody and support. He sought shared physical custody of Eli and asked the court to modify the child support order accordingly.

Brittany opposed Cory's motion, expressing "concerns for [Eli]'s safety and wellbeing in [Cory]'s home." She proposed modifying the parties' agreement to provide Cory visitation with Eli every other weekend during the school year and for alternating weeks during the summer. Brittany also proposed adding conditions that Eli not have unsupervised contact with Connor and that she be "provided with comprehensive information regarding [Connor]'s case and current status of his treatment."

In November 2021 the superior court issued an interim order granting Cory visitation with Eli every other weekend and requiring that all contact between Eli and Connor be supervised. The court held a hearing on Cory's motion to modify custody in July 2022. Cory and Brittany gave the majority of the testimony. Neither party moved to admit OCS reports into evidence at the hearing, but the parties stipulated that the court could "take judicial notice" of OCS reports regarding Eli and Connor as evidence of the truth of the statements they contained.

Citing the OCS reports, Brittany testified she was concerned about Eli's safety around Connor. Cory also acknowledged he was aware of the OCS investigation and of allegations that Connor "would exhibit sexualized behaviors with" another child relative. Cory testified he had installed security cameras in his home to help supervise Connor's contact with Eli. The superior court identified Eli's safety around Connor as "the biggest issue" raised at the hearing.

Both Cory and Brittany testified that Connor had received counseling. Cory testified that Connor had received counseling "since he was younger" in response to his "behavior" and his mother's belief that he had attention-deficit/hyperactivity disorder (ADHD), but the counseling had been "off and on." Cory later testified that Connor had been receiving weekly counseling since June 2022. Brittany testified that Connor "just started doing counseling" but "hasn't been in consistent counseling for years." Brittany said she thought one purpose of the counseling was to make Cory "look good in court."

Eli's counselor testified that Eli never told him that Eli had experienced sexual abuse by Connor. Cory's mother testified to Cory's competence as a parent. A monitor at Eli's school testified that Eli's attitude improved when he spent time with Brittany.

Following the hearing, the court issued an order modifying visitation. It found that "[b]oth parents [were] capable of meeting [Eli]'s basic physical and emotional needs." However, the court found that Connor "pose[d] a risk of harm to [Eli]" and that Connor "ha[d] not received treatment to address his sexual behaviors with children."

Based on these findings, the court concluded, "[g]iven the safety concerns in Cory's home," it would be in Eli's best interests to limit visitation with Cory. The court ordered that Brittany would retain primary physical custody and Cory would be allowed to have overnight visitation every other weekend, so long as Cory directly

supervised Eli's contact with Connor. Finally, it ordered that Brittany would retain sole legal custody of Eli because it found the parents could not "communicate in a meaningful way," which left them "unable to share legal custody."

Cory now appeals.

## III. STANDARD OF REVIEW

The superior court has "broad discretion in determining whether a proposed child-custody modification is in the child's best interests."[2] "We will reverse a trial court's resolution of custody issues only if [we are] convinced that the record shows an abuse of discretion or if controlling factual findings are clearly erroneous."[3]

A factual finding is clearly erroneous if "a review of the record leaves [us] with a definite and firm conviction that the superior court has made a mistake."[4] We will conclude a finding was clearly erroneous if there is no evidence in the record to support the finding.[5] In a child custody case, "[c]learly erroneous fact[ual] findings are reversible error when they are 'controlling,' but not if they are immaterial."[6]

## IV. DISCUSSION

Cory challenges the order awarding him overnight visitation with Eli limited to "every other weekend." Cory argues the superior court made and relied on two clearly erroneous factual findings when deciding to limit his visitation with Eli. First, Cory argues it was clear error to find that Connor posed a risk of harm to Eli.

---

[2]     *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011).

[3]     *Pingree v. Cossette*, 424 P.3d 371, 376-77 (Alaska 2018) (quoting *Vachon v. Pugliese*, 931 P.2d 371, 375 (Alaska 1996)).

[4]     *Thompson v. Thompson*, 454 P.3d 981, 988 (Alaska 2019) (quoting *Geldermann v. Geldermann*, 428 P.3d 477, 481 (Alaska 2018)) (alteration in original).

[5]     *See Sandberg v. Sandberg*, 322 P.3d 879, 889 (Alaska 2014).

[6]     *Pingree*, 424 P.3d at 377 (quoting *Vachon*, 931 P.2d at 375).

Second, Cory argues it was clear error to find that Connor had not received treatment to address his sexual behaviors with children.

The superior court's finding regarding the risk of future harm to Eli was not clearly erroneous. But we conclude the finding that Connor "ha[d] not received treatment to address his sexual behaviors with children" was clearly erroneous because there is no evidence in the record to support that finding. Because one of the controlling findings that formed the basis for the superior court's order modifying the parties' visitation schedule was clearly erroneous, we vacate that order and remand for further proceedings.[7]

### A. The Superior Court Did Not Clearly Err By Finding That Connor Posed A Risk Of Future Harm To Eli.

Cory argues the superior court's factual finding that Connor "poses a risk of harm to [Eli]" was clearly erroneous. He maintains the finding was not supported by evidence apart from "anonymous hearsay" in OCS reports.[8] But during the modification hearing, Cory's attorney urged the court to review the OCS reports for the truth of the statements they contained and stipulated that the court could rely on them. We agree that unsubstantiated allegations in anonymous reports to OCS are entitled to minimal evidentiary weight. However, in this case, the record includes additional

---

[7] Because we vacate the order modifying the parties' visitation schedule on other grounds and remand for further proceedings, we do not reach Cory's arguments that the superior court abused its discretion by failing to consider an evenly shared physical custody arrangement and by not making explicit findings regarding some of the statutory factors used to determine the best interests of a child.

[8] The superior court appears to have treated the OCS reports as though they had been admitted into evidence for the truth of the statements they contained. Neither party raised a timely objection to the court's consideration of the OCS reports and Cory's arguments on appeal address only the weight — not the admissibility — of those reports. We therefore do not address whether the reports were or should have been admitted into evidence.

corroborating evidence from which the superior court could find that Connor posed a risk of harm to Eli, including Cory's own testimony.[9] The superior court's risk-of-harm finding was therefore not clearly erroneous.

Cory's statements suggest he believed Connor might present a risk of future harm to Eli. Cory testified that he was aware of allegations that Connor exhibited sexual behaviors with another child relative. According to OCS reports, Cory also reported to an OCS caseworker that he was aware that Connor had "messed around with his older brother and kids in the neighborhood" when Connor was between the ages of 3 and 7. Cory also reported knowing that Connor had "introduced the same things" to another sibling.

Cory's statements to OCS were relevant, admissible evidence. Because Cory is a party, his statements are not hearsay.[10] Cory argues a reader cannot determine from the OCS report "whether [he] was acknowledging that those incidents occurred, or merely that they were allegations he was familiar with." But nothing in the report suggests Cory was discussing his understanding of allegations rather than his beliefs about the underlying facts. Taken as a whole, Cory's statements provide some support for the court's finding that Connor posed a risk of harm to Eli.

Cory's attorney also made concessions that tended to support the finding that Connor posed a risk of harm to Eli. After the superior court stated it was "reasonable" for Brittany to be "concerned about [Eli]'s safety in [Cory]'s household" because of "the nature of the allegations," the court stated, "[Y]our client's not disputing that there is a history there for [Connor]." Cory's attorney confirmed, "[H]e's not."

---

[9] *Cf. Tong Vang v. Pa Kou Xiong*, 531 P.3d 979, 983 (Alaska 2023) (noting "the trial court is better suited [than we are] to judge the credibility of witnesses and weigh conflicting evidence").

[10] Alaska R. Evid. 801(d)(2)(A) (excluding from definition of hearsay "the party's own statement" when offered against that party).

Cory's attorney argued instead that Connor did not present a risk of harm to Eli in Cory's home because Cory had taken several protective measures to mitigate any risk, including installing security cameras in his home and supervising Connor's contact with Eli. While Cory's testimony about the protective measures he took does suggest a lower level of risk to Eli in Cory's home, the court was not required to conclude that these protective measures obviated any risk.[11]

"We afford particular deference to factual findings based primarily on oral testimony, because the trial court is better suited [than we are] to judge the credibility of witnesses and weigh conflicting evidence."[12] Because the record includes oral testimony and other admissible evidence that supports the superior court's finding that Connor posed a risk of future harm to Eli, the court's risk-of-harm finding was not clearly erroneous.

## B. The Finding That Connor Had Not Received Treatment To Address His Sexual Behaviors With Children Was Clearly Erroneous.

The record does not support the finding that "[Connor] ha[d] not received treatment to address his sexual behaviors with children." While the record does not establish the type of counseling Connor received and whether it was adequate to address the superior court's concerns, we conclude it was clear error to find that Connor had not received *any* treatment to address inappropriate sexual behavior.

There is undisputed evidence in the record that Connor had received counseling prior to the superior court's order modifying visitation. Some of this evidence suggests Connor received counseling related to the allegations of sexually

---

[11]    *See Cynthia W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 497 P.3d 981, 987 (Alaska 2021) ("Conflicting evidence is generally insufficient to overturn the superior court, and we will not reweigh evidence when the record provides clear support for the superior court's ruling.").

[12]    *Tong Vang*, 531 P.3d at 983.

inappropriate behavior. Brittany testified Connor had recently been attending counseling. In an interview with OCS regarding Connor's alleged behavior, Cory stated Connor had been receiving counseling at school. Brittany also told OCS that Connor had been attending counseling.

While other evidence in the record regarding the purpose and adequacy of the counseling Connor received is mixed, that evidence does not support a finding that the counseling never addressed the alleged sexually inappropriate behavior. Cory suggested that some of the counseling Connor received may have been related to ADHD, but he did not indicate whether Connor later received counseling for another purpose. Because the finding that Connor had not received treatment to address his sexual behaviors with children is not supported by any evidence in the record, that finding was clearly erroneous.[13]

We conclude the clearly erroneous factual finding that Connor had not received appropriate treatment was a "controlling" finding and that it was material to the superior court's custody decision.[14] The court indicated the risk of harm that Connor presented to Eli was central to its decision. It told the parties Eli's safety around Connor was "the biggest issue" at the custody modification hearing and eventually concluded its order modifying visitation by stating, "Given the safety concerns in Cory's home, it is in [Eli]'s best interest that the Court modify Cory's visits . . . ." The court's finding that Connor had not received any appropriate treatment immediately followed a statement about the "future risk of harm" that Connor presents to Eli, suggesting that

---

[13] *See Sandberg v. Sandberg*, 322 P.3d 879, 889 (Alaska 2014).

[14] *Pingree v. Cossette*, 424 P.3d 371, 377 (Alaska 2018) ("Clearly erroneous fact findings are reversible error when they are 'controlling,' but not if they are immaterial." (quoting *Vachon v. Pugliese*, 931 P.2d 371, 375 (Alaska 1996)); *see also* Alaska R. Civ. P. 61 ("The court . . . must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

the court believed its finding regarding Connor's treatment directly supported its conclusion about the risk of harm.

Because the factual finding regarding Connor's treatment was clearly erroneous, "controlling," and not "immaterial,"[15] we vacate the order modifying the parties' visitation schedule and remand this case for further proceedings. On remand, the superior court may — at its discretion — take additional evidence regarding the nature of the treatment Connor has received. Finally, in light of our decision that it was clear error to find that Connor had not received any relevant treatment, we direct the court to reconsider the extent of the risk of harm that Connor may pose to Eli.

## V.    CONCLUSION

We VACATE the order modifying the parties' visitation schedule and REMAND for further proceedings consistent with this opinion.

---

**15**    *Pingree*, 424 P.3d at 377.

CARNEY, Justice, concurring.

I agree with the court that it was clear error for the superior court to find that Connor "ha[d] not received treatment to address his sexual behaviors with children." And I agree that as a result of that clearly erroneous controlling finding, the court's order modifying custody must be vacated. But it was an additional clear error to find that Connor "pose[d] a risk of harm to" Eli, and I would vacate the order on that basis as well and require the court, on remand, to reconsider whether such a risk exists.

I am particularly troubled by this second error — according apparently controlling weight to *unsubstantiated* OCS findings and the fact that Cory installed security cameras to protect his sons. For decades[1] OCS has been tasked with investigating reported danger to Alaska's children. Its professional judgment is relied upon daily by Alaska courts to assess whether children are at risk and whether action is needed to protect them. Despite its familiarity with OCS's expertise, the court disregarded the agency's conclusion that reports that Connor presented a danger to Eli could not be substantiated.

More distressing to me is the court's apparent decision to turn Cory's choice to go to unusual lengths to protect his sons into a sign that he was not appropriately protective. Cory was forthright when questioned about his awareness of Connor's past behavior. He, more than once, enrolled his young son in counseling to address troubling behavior. And, on his own initiative, he bought and installed security cameras inside his home to supplement the supervision he was already providing his sons. It appears to me that the superior court failed to give Cory credit for his

---

[1]     The Division of Social Services operated child welfare services beginning in 1975; the agency has been reorganized and given different names in the intervening years. *See* DEP'T OF FAM. AND COMM. SERVS., OFF. OF CHILD.'S SERVS., CHILD PROTECTION SERVICES MANUAL 23 (2022).

extraordinary measures to protect his sons when it gave decisive weight to the unsubstantiated reports.  I believe the superior court clearly erred on this issue as well.