*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SKYLAR J. BURNS-MARSHALL, | ) | |
| | ) | Supreme Court No. S-16808 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-16-10010 CI |
| v. | ) | |
| | ) | O P I N I O N |
| VICTORIA A. KROGMAN, | ) | |
| | ) | No. 7314 – November 9, 2018 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Allison Mendel and John J. Sherman, Mendel Colbert & Associates, Inc., Anchorage, for Appellant. Douglas C. Perkins, Hartig Rhodes LLC, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

CARNEY, Justice.

## I.    INTRODUCTION

A divorcing couple disputed custody of their child and division of their marital property. The wife alleged for the first time during trial that the husband had engaged in a pattern of domestic violence. The court found her testimony credible, applied the statutory domestic violence presumption, and awarded her primary physical and sole legal custody of the child. The husband filed a motion to reopen the evidence

regarding domestic violence and substance abuse more than a month after the court's oral decision. The court denied his motion. The court divided the marital property 60/40 in favor of the wife, awarded all of the real property to the husband, and ordered him to make an equalization payment.

The husband appeals the denial of his motion to reopen the evidence and the property division. Because the husband waived any argument that he should be allowed to present additional evidence and the court did not abuse its discretion in its property division, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

Skylar Burns-Marshall and Victoria Krogman married in Anchorage in June 2007. Their only child was born in 2011. They owned a condominium in Anchorage and a vacant lot in Homer. They separated in October 2016 and shared custody of the child.

Burns-Marshall worked seasonally as a pipe layer and found other temporary employment or collected unemployment compensation during the winter. Krogman worked at various jobs during the marriage. After her separation from Burns-Marshall, Krogman moved to Arizona. At the time of trial she was enrolled in a nursing program at an Arizona university.

### B. Proceedings

#### 1. Pre-trial

Burns-Marshall filed for divorce in November 2016 and sought joint legal and shared physical custody of their child. In her answer Krogman denied that Burns-Marshall was fit to have joint legal and shared physical custody and asked for sole custody, with reasonable visitation for Burns-Marshall.

The parties filed a number of pretrial motions. In her pleadings and motions Krogman made seemingly inconsistent statements about the trial and her marriage with Burns-Marshall. In a November motion she referred to Burns-Marshall's "harsh and controlling behavior throughout the marriage," and alleged that Burns-Marshall had previously been convicted of minor consuming alcohol and that he "still drinks to excess." But in January 2017 Krogman opposed Burns-Marshall's motion for the appointment of a child custody investigator because their child was too young for an interview to be helpful and because there were no "bad facts" or anything "so unusual or troubling about this case" that would require a child custody investigation. In a February motion to set a trial date Krogman characterized the divorce as "a routine relocation custody case . . . and a simple property case"; she stated both issues would be "very straightforward and . . . easy to prepare for and address at trial."

The superior court scheduled a 3-day trial in April and ordered that discovery be completed 14 days before the start of the trial. Burns-Marshall conducted no discovery; he did not depose Krogman or send her interrogatories.

Shortly before trial both parties filed trial briefs. Burns-Marshall requested primary physical custody and shared legal custody. Krogman argued that she should have sole legal and exclusive physical custody, and alleged that Burns-Marshall did not care for the child's basic needs.

**2.  Trial**

The trial took place over 4 days in April 2017.

Burns-Marshall testified that he and Krogman were both great parents and that neither of them had substance abuse problems or had committed domestic violence. Krogman's counsel did not question him about domestic violence or substance abuse. Burns-Marshall also called several witnesses including one who mentioned an incident during which Krogman threw a picture frame at Burns-Marshall.

In her testimony Krogman criticized Burns-Marshall's parenting, alleging that he did not take care of their child's hygiene or safety, made homophobic and racist comments in front of the child, and did not support her relationship with the child. She also testified that Burns-Marshall had substance abuse issues throughout their relationship. Krogman testified that there had been incidents of domestic violence both before and during their marriage. Krogman testified that Burns-Marshall had sexually assaulted her on a number of occasions and asked the court to apply the statutory presumption regarding domestic violence in its custody determination.[1]

Burns-Marshall objected to Krogman's request to apply the domestic violence presumption, arguing that it was inappropriate to invoke without raising it in her original answer as a counterclaim. The court overruled his objection, holding that the presumption could be raised at any point.

The court scheduled an additional day of trial to allow Burns-Marshall to rebut Krogman's evidence. Burns-Marshall asserted that two hours on the additional day of trial would be sufficient to present his rebuttal. Burns-Marshall called five rebuttal witnesses who testified that Krogman had never told them that Burns-Marshall committed domestic violence or had a substance abuse problem. Burns-Marshall testified that he had never sexually assaulted Krogman or been physically violent against her. Krogman then called three surrebuttal witnesses. And the court permitted Burns-Marshall to briefly testify again to address the surrebuttal evidence.

The superior court made oral findings on April 27. It found Krogman more credible than Burns-Marshall and found by a preponderance of the evidence that multiple acts of domestic violence, including several incidents of sexual assault, had occurred.

---

[1]     *See* AS 25.24.150(g) (creating rebuttable presumption against awarding sole or joint custody to parent with history of perpetrating domestic violence).

The court also found the incident where Krogman threw a picture frame at Burns-Marshall to be an incident of domestic violence but did not find that Krogman had committed any other domestic violence. Because it found that Burns-Marshall had engaged in a pattern of domestic violence but that Krogman had not, the court applied the domestic violence presumption and awarded Krogman sole legal and primary physical custody. The court also found in the alternative that it would have awarded Krogman sole legal and primary physical custody based upon its consideration of the child's best interests. The court applied the factors listed in AS 25.24.150(c), finding that Krogman was better able to meet the child's needs, that the parties would not be able to cooperate, that Burns-Marshall had committed domestic violence, and that Burns-Marshall abused alcohol.

The court ordered that Burns-Marshall have contact with the child by Skype or Facetime twice a week. It ordered Burns-Marshall to obtain a substance abuse assessment and comply with its recommendations, as well as to complete a domestic violence intervention program. The court ordered that Burns-Marshall would be allowed to have unsupervised visits over Thanksgiving, Christmas, and spring vacation after he completed any recommended treatment.

Turning to the property division, the superior court determined that a 60/40 split of the marital assets in Krogman's favor was fair and equitable. The court observed that Krogman would no longer have health insurance and that the disparity in the parties' income required it to deviate from a 50/50 split. The court found that Burns-Marshall had an earning capacity of more than $100,000 per year, while Krogman's current earning capacity was around $15,000 per year and would likely be $50,000 to $55,000 per year after she obtained her nursing degree.

The court accepted the parties' stipulated values for their real property ($130,000 for the Anchorage condo and $120,000 for the Homer lot) and awarded both

of the properties to Burns-Marshall. It awarded Burns-Marshall the $112,334.26 in debt on the Anchorage property and $57,008.39 in debt on the Homer property, and stated that Burns-Marshall could choose to keep or sell both properties.[2]

The court ordered Burns-Marshall to make an equalization payment to Krogman. It recognized that there "may be a problem funding the equalization payment" and that Burns-Marshall would have "to deal with that either by selling assets or by taking money, if he can, out of his pension retirement." The court also ordered Burns-Marshall to pay rehabilitative alimony of $1,000 per month for two years, and it awarded Krogman $7,500 in attorney's fees due to the economic disparity between the parties.

### 3. Post-trial motions

In June Burns-Marshall filed a motion to reopen the trial record under Alaska Civil Rule 59 "on the grounds that [he] had no notice of the issues to be tried and was unable to present relevant evidence as a result." He argued that he would have presented different evidence at trial if he had notice that Krogman would allege domestic violence and substance abuse. Burns-Marshall alleged that Krogman deliberately concealed her intended arguments before trial. Krogman opposed, arguing that Burns-Marshall had waived any right to reopen discovery and that he had actual and constructive notice of the allegations of substance abuse and domestic violence. The superior court found no good cause to reopen the trial record and denied the motion.

In July the court issued its decree of divorce and its written findings of fact and conclusions of law. The written findings of fact and conclusions of law recited almost verbatim its oral decision except that the court had calculated the precise amount

---

[2]     The Anchorage property was solely in Burns-Marshall's name. The court also ordered that, if Krogman was still on the title for the Homer property, Burns-Marshall had to remove her from the title within a year or sell the property.

of the equalization payment to $73,266.29.[3]

Burns-Marshall filed a motion for reconsideration of the superior court's property division, asking the court to consider the costs and risks involved in selling the property and to modify the property division by awarding Krogman the Homer lot or, alternatively, calculating the equalization payment based on the actual sale price. He argued that he would receive significantly less than 40% of the marital estate once the cost of selling the property was taken into account. Krogman opposed, arguing that Burns-Marshall was not required to sell either property. The court denied the motion for reconsideration.

In November the court entered a partial final judgment against Burns-Marshall in the principal amount of $73,266.29 and attorney's fees in the amount of $7,500 plus statutory interest.

Burns-Marshall appeals the superior court's denial of the motion to reopen and its property division.

## III.    STANDARD OF REVIEW

"We review a superior court's ruling on a party's request to reopen evidence for abuse of discretion."[4]

"The valuation of property is a question of fact and is reviewed for clear error."[5] "The superior court's ultimate distribution of assets is reviewed for abuse of

---

[3]    The court also changed the day of one of the scheduled weekly calls between Burns-Marshall and the child.

[4]    *Snider v. Snider*, 357 P.3d 1180, 1184 (Alaska 2015).

[5]    *Fortson v. Fortson*, 131 P.3d 451, 456 (Alaska 2006).

discretion, and will be reversed only if the distribution is clearly unjust."[6]

## IV. DISCUSSION

### A. The Trial Court Did Not Abuse Its Discretion When It Declined To Reopen The Trial Record.

Burns-Marshall argues that the superior court abused its discretion by denying his motion to reopen the trial record 47 days after its oral decision. We disagree.

During the trial Burns-Marshall did not object to evidence of substance abuse or domestic violence; he only objected to the application of the domestic violence presumption. Burns-Marshall affirmatively stated that two hours of additional trial time for rebuttal "should be more than enough" to present his rebuttal witnesses.[7] Burns-Marshall did nothing to suggest that he wished to present additional evidence after presenting his rebuttal and sur-surrebuttal. The trial court could reasonably conclude that filing a motion to reopen the trial record 47 days after the court's oral decision was insufficient to preserve Burns-Marshall's opportunity to present additional evidence.[8] Accordingly it was not an abuse of discretion to find "no good cause" to reopen the trial record.

---

[6] *Id.*

[7] *Cf. Wright v. Black*, 856 P.2d 477, 480 (Alaska 1993) (concluding that appellant had waived right to object to his lack of notice that paternity would be at issue at child support modification hearing because he failed to object when the master "announced at the beginning of the hearing that he would resolve the paternity issue, . . . asked if anyone had a problem with his taking testimony on both issues, . . . [and] directed his questions to the paternity issue"), *overruled on other grounds by B.E.B. v. R.L.B.*, 979 P.2d 514 (Alaska 1999).

[8] *Cf. Jaymot v. Skillings-Donat*, 216 P.3d 534, 544 (Alaska 2009) ("An issue raised [for the first time in a motion for reconsideration] is untimely and is not properly before the court on appeal.").

The superior court is required to consider evidence of domestic violence in a child custody determination.[9] The "primary purpose" of the statutory domestic violence presumption in child custody cases is "to protect children from potentially adverse custody determinations in response to growing evidence that domestic violence has severe and long-lasting effects on children . . . by ensuring that domestic violence [is] adequately and specifically included when courts analyzed a child's best interests."[10] Krogman alleged a pattern of domestic violence by Burns-Marshall; it was appropriate and necessary for the court to consider it.

Burns-Marshall objected to application of the domestic violence presumption because he was surprised by Krogman's request. But he could have avoided such a surprise: he could have conducted discovery before trial. Even if he had not done so, he could have asked for a continuance of the trial to conduct discovery when Krogman raised the issue, or he could have filed a timely motion to reopen the evidence following the court's application of the presumption against him. Burns-Marshall failed to do any of these things; it was reasonable to find he was not entitled to introduce new evidence over a month after the court's decision.[11]

## B. The Superior Court Did Not Abuse Its Discretion By Failing To Address The Costs And Risks Of Sale Of The Property.

Burns-Marshall argues that the court abused its discretion by failing to take

---

[9] *Sarah D. v. John D.*, 352 P.3d 419, 430 (Alaska 2015) ("Under AS 25.24.150(g) superior courts *must* 'consider alleged incidents of domestic violence.' " (quoting *Parks v. Parks*, 214 P.3d 295, 302 (Alaska 2009) (per curiam))).

[10] *Williams v. Barbee*, 243 P.3d 995, 1001 (Alaska 2010).

[11] Because we find that the court did not abuse its discretion in denying Burns-Marshall's motion to present additional evidence we do not reach his due process argument.

into account the costs and risks associated with selling the real property it awarded to him and that it therefore clearly erred in its valuation of the property. We disagree.

"[T]he superior court must consider sales costs when its property division is premised on an economically disadvantaged party being forced to sell a house."[12] But that was not the case here: the court found that Burns-Marshall was the economically advantaged party and allowed him to decide whether to sell the property awarded to him.[13]

The court divided the property 60/40 in Krogman's favor because of the disparity in the parties' earning capacity and because she would no longer have health insurance through Burns-Marshall's job. It found that Burns-Marshall's earning capacity of more than $100,000 per year was much greater than Krogman's $15,000, or even the $50,000 or $55,000 she could earn after completing her nursing degree. Because the court recognized that it was unrealistic to expect the parties to cooperate to sell the properties, it awarded them to Burns-Marshall. Sale of either property and payment of costs associated with the sale would not defeat the court's intent to award Krogman a greater portion of the marital estate because of her significantly smaller earning capacity.

Furthermore, the superior court is only required to consider the cost of sale of awarded property in a property division when the sale is certain and the direct result

---

[12]   *Beal v. Beal*, 88 P.3d 104, 117 (Alaska 2004); *see Fortson v. Fortson*, 131 P.3d 451, 461 (Alaska 2006); *Tollefsen v. Tollefsen*, 981 P.2d 568, 571-72 (Alaska 1999).

[13]   *Fortson*, 131 P.3d at 461 ("Where a court order or external conditions force a party to sell, the court must grant the party necessary costs because 'the court's failure to make provision for the costs of repairs and sale of the real property awarded . . . defeat[s] its stated goal of awarding [an economically disadvantaged party] the greater share of the marital estate.' " (alterations in original) (quoting *Tollefsen*, 981 P.2d at 572)); *see also Beal*, 88 P.3d at 117.

of the property division.[14]  Here the court acknowledged that Burns-Marshall could decide whether to sell or keep the properties, even though it recognized that Burns-Marshall would likely have to sell or liquidate some assets to make the equalization payment.  While the court's property division made it likely that Burns-Marshall would have to sell or liquidate some property to make the equalization payment to Krogman, the sale of the real property was not so certain as to require the court to consider the consequences of its sale.[15]  Under these circumstances, it was not an abuse of discretion to award Burns-Marshall the property without considering the costs of sale.[16]

## V.    CONCLUSION

We AFFIRM the superior court's orders.

---

[14]    *Tollefsen*, 981 P.2d at 572; *cf. Dundas v. Dundas*, 362 P.3d 468, 477-78 (Alaska 2015) (holding that tax consequences of sale must be considered when court "orders that property be distributed in a way that creates an immediate and specific tax liability" (quoting *Oberhansly v. Oberhansly*, 798 P.2d 883, 887 (Alaska 1990))).  We have only required the court to consider the sales costs when sale of the awarded property is "inevitable." *Fortson*, 131 P.3d at 461.

[15]    *Cf. Dundas*, 362 P.3d at 478-80 (finding that tax consequences had to be considered for equipment sold before property division, property already in process of being sold at time of trial, and property that court approved sale of before trial).

[16]    Burns-Marshall also argues that the court did not provide a reasonable period for Burns-Marshall to sell the property before issuing a judgment and imposing interest.  But Burns-Marshall does not provide any citations or legal arguments for why that was error and the issue is waived. *See Kollander v. Kollander*, 400 P.3d 91, 94 n.3 (Alaska 2017) ("Because [appellant] addresses these issues only cursorily and does not cite to authority for either argument, we consider them waived.").