NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| NILS THEISEN, | ) |
| | ) Supreme Court No. S-18246 |
| Appellant, | ) |
| | ) Superior Court No. 4DJ-20-00054 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STEPHANIE THOMPSON, | ) AND JUDGMENT* |
| | ) |
| Appellee. | ) No. 1948 – February 15, 2023 |
| | ) |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: Roberta C. Erwin, Palmier ~ Erwin, LLC, Anchorage, for Appellant. Stephanie Thompson, pro se, Killeen, Texas, Appellee.

Before: Winfree, Chief Justice, Maassen, Borghesan, and Henderson, Justices. [Carney, Justice, not participating.]

## I. INTRODUCTION

An unmarried mother and father shared physical custody of their young daughter. The mother planned to move out of state, and the father sought a court order awarding him joint legal and shared physical custody. The superior court, after hearing the parties' testimony, found that the mother was the child's primary caretaker and would better facilitate a long-distance relationship between the child and the father; it therefore

---

\* Entered under Alaska Appellate Rule 214.

ordered that the mother would have primary physical custody of the child if she moved. The father filed a motion for relief from judgment, which the court denied. The father appeals.

We conclude that the superior court did not abuse its discretion by denying the motion for relief from judgment, and we therefore affirm the custody order.

## II. BACKGROUND

Nils Theisen and Stephanie Thompson had an on-and-off relationship beginning in 2016, and in 2018 they had a daughter. When Nils and Stephanie were together they lived in Delta Junction with their daughter and Stephanie's two children from a previous relationship, taking "turns working and staying home with [the children]." When the relationship ended in 2019, the parents generally shared physical custody of their daughter, one watching her while the other worked; when both of them worked, Nils's parents cared for the child.

In late 2020 Stephanie told Nils that she intended to move out of state. In October Nils filed a custody and visitation plan with the court, seeking joint legal and shared physical custody. He said he was opposed to "permanent moves" out of state. He proposed that he and Stephanie continue with their "every other day and every other weekend" schedule, though he stated he was "open minded to change if requested by [Stephanie]."

### A. Trial

The court held a trial in March 2021 at which Nils and Stephanie represented themselves. They were the only witnesses. Nils and Stephanie both testified that they were able to share custody, although there were significant conflicts in their relationship. One of Nils's friends had purportedly made allegations of child abuse against Stephanie a year earlier, and OCS opened an investigation. A safety plan was put in place and the child stayed with Nils's parents. Stephanie testified that she did not visit

the child often during this time because she did "not feel comfortable at [Nils's] parents' house," but Nils brought the child to Stephanie's home for visits. After 60 days OCS determined that the allegations against Stephanie were unsubstantiated, and the safety plan was lifted.

Stephanie also testified that when she and Nils lived together he kicked her and her older children out of the house a number of times, including the night before she gave birth to their daughter. She testified that since their separation Nils had harassed her and had shown up at custody exchanges intoxicated. She testified that Nils's father was often angry and rude toward her, making her uncomfortable going to Nils's parents house. Nils denied noticing "any problem with disrespect coming from [his] father," but he agreed that Stephanie and his parents did not get along.

Both parties also testified about Stephanie's plans to move. Stephanie testified that she hoped to move to Texas "with [the child] so that [she] [could] be near [her] family and have a support system," as she had none in Alaska. She testified that she planned to keep the child with her in Texas during the school year and bring her up to Alaska in the summer and for visits at Nils's request. She testified that her older children would split their time between Texas and Alaska; according to Stephanie, she and the older children's father planned for the children to have lengthy, alternating stays in both Texas and Alaska.

Nils testified that Stephanie was "being untruthful about where she wants to move" because although she claimed to want "to be with her family and support system," "her family is in Wisconsin." Stephanie responded that moving to Texas was and had "always been [her] plan," but she had begun telling Nils she was moving to Wisconsin "due to all the harassment that he was texting [her]."

B. **Child Custody Order**

The court issued its custody order in April 2021. Addressing the custody

factors listed in AS 25.24.150(c), the court found that "[the child] is a healthy child with the ordinary needs of a two year old" and that her "unique social needs include close sibling ties with two half-siblings . . . and close grandparent ties with the paternal grandparents."[1] The court found that Stephanie had "been the primary parent for" the child, who "likely sees . . . [Stephanie] and the two older siblings . . . as her primary family unit." The court found that Stephanie was "best able to care for the child on an everyday basis" and was "best able to meet the important social needs for [the child] to maintain the ties with her siblings. By comparison, [Nils] relie[d] heavily on his parents to assist him when he [was] caring for the child and he ha[d] a history of subordinating parenting duties to employment opportunities."[2]

The court found that the child was "not of sufficient age to express a preference" as to which parent should have primary physical custody[3] and that "[b]oth parents have been intimately involved in the child's life since birth. There are bonds of love and affection existing between the child and both parents."[4] It found that the child "has been in a highly irregular, somewhat contentious, back and forth custody situation for many months" and that "[t]his pattern has not been stable or satisfactory."[5]

---

[1]    *See* AS 25.24.150(c)(1) (requiring court to consider "the physical, emotional, mental, religious, and social needs of the child").

[2]    *See* AS 25.24.150(c)(2) (requiring court to consider "the capability and desire of each parent to meet [the child's] needs").

[3]    *See* AS 25.24.150(c)(3) (requiring court to consider "the child's preference if the child is of sufficient age and capacity to form a preference").

[4]    *See* AS 25.24.150(c)(4) (requiring court to consider "the love and affection existing between the child and each parent").

[5]    *See* AS 25.24.150(c)(5) (requiring court to consider "the length of time the
(continued...)

The court found that Nils and his parents "have not adequately demonstrated a willingness to facilitate and encourage a relationship between the child and [Stephanie]" due to the testimony about hostility from the paternal grandfather and the testimony that "[t]he contentious dynamic between the parents resulted in an [unsubstantiated] OCS report being made against [Stephanie]," something that "unnecessarily separate[d] the child from [Stephanie] for far too long."[6] The court found this factor "significant" due to the fact that Nils and Stephanie "plan to live in separate states" and "[t]he custodial parent in a long distance custody case must be a good gatekeeper parent who can encourage and facilitate a long distance relationship between the child and the other parent." It found Nils and his parents "deficient in this regard."

Lastly, the court found no evidence of domestic violence or substance abuse in either household that would affect the child's best interests.[7]

The court found that Stephanie and Nils "can cooperate enough to share joint legal custody" and ordered that "[i]f the parties live in the same community, physical custody should be shared on a week-on/week-off basis." But because "[Stephanie] intend[ed] to move to Texas," the court ordered that "[i]f the parties live in different communities, [Stephanie] shall have primary custody and [Nils] shall have

---

[5] (...continued) child has lived in a stable, satisfactory environment and the desirability of maintaining continuity").

[6] *See* AS 25.24.150(c)(6) (requiring court to consider "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child").

[7] *See* AS 25.24.150(c)(7)-(8) (requiring court to consider "any evidence of domestic violence . . . in the proposed custodial household" and "evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child").

visitation" rights dependent upon the child's age, as well as the right "to visit the child in [her] home community on a reasonable basis."

### C. Motion For Relief From Judgment

Two weeks after the court issued its custody order, Nils filed a motion for relief from judgment, citing subsections (1), (3), and (6) of Alaska Civil Rule 60(b).[8] He challenged essentially three of the court's factual findings. First, he disputed the finding that Stephanie had " 'significantly more parenting time with the child than [Nils]' given the history of how custody of [the child] has been shared since her birth." Second, he faulted the court for accepting Stephanie's testimony that she planned to take her older children with her to Texas. He labeled this "a critical misrepresentation" given that Stephanie did not actually have custody of those children and their father had "no plans to share custody with her"; Nils filed in support an affidavit from the older children's father. Third, Nils argued that the court erred by "fault[ing] Nils and his parents for what it deemed to be negative behavior towards Stephanie by Nils'[s] parents."

Nils argued that Rule 60(b)(1) applied "because of his excusable neglect [in] assuming that Stephanie would be honest with [the] Court. He was not prepared to call witnesses — [the father of Stephanie's older children] or his parents — to refute what Stephanie presented." He argued that Rule 60(b)(3) applied because of Stephanie's alleged misrepresentations. And he argued that Rule 60(b)(6) applied because of the court's legal error in failing to conduct "a symmetrical analysis in consideration of

---

[8]     Civil Rule 60(b) provides in relevant part: "[T]he court may relieve a party . . . from a final judgment, order, or proceeding [due to]: (1) mistake, inadvertence, surprise or excusable neglect; . . . (3) fraud . . ., misrepresentation, or other misconduct of an adverse party; . . . [or] (6) any other reason justifying relief from the operation of the judgment."

Stephanie's planned relocation as required pursuant to *Moeller-Prokosch v. Prokosch*."[9]

The court held a hearing on the motion in June 2021, after Stephanie had already moved to Texas with the child.

**D.     Order Denying Motion For Relief From Judgment**

The superior court denied Nils's motion for relief from judgment, concluding that "the parties had a full and fair hearing, . . . there were no intentional misrepresentations, and . . . the decision and order for custody is based upon essentially undisputed facts and the statutory best interest factors."  In response to Nils's argument that he was not prepared to call witnesses to refute Stephanie's testimony, the court observed that he had the opportunity to call witnesses but chose not to.  The court concluded that "[t]here was no unfairness in the proceedings" and "no surprises at trial."  The court also clarified that its decision was "based on essentially undisputed facts and the admissions of [Nils]," and therefore "it is unlikely that calling additional witnesses would change the findings upon which the decision [was] based."

The court explained that it found Stephanie's testimony regarding her relationship to Nils's parents credible and "[Nils's] claim to not know whether his father was disrespectful to [Stephanie]" not credible.  The court said it understood that Stephanie "did not have primary [physical] custody of her older children" and that her assertions about the children moving with her to Texas "were hopeful, unrealistic, and unlikely, but they were not intentional misrepresentations.  In any case, they were not relied upon."  The court concluded that regardless of "whether the older children [were]

---

[9]     99 P.3d 531 (Alaska 2004) (*Moeller-Prokosch III*).  The *Moeller-Prokosch* standard provides that in a child custody case in which one parent plans to move out of state, the court's best interests analysis "requires symmetrical consideration of the consequences to [the child] both if [the parent] leaves with [the child] and if [the parent] leaves without [the child]."  *Id.* at 535-36.

in the primary custody of [Stephanie]," she was "the best person to promote" the relationship between the parties' daughter and her older siblings.

The court did not specifically mention the *Moeller-Prokosch* symmetrical analysis, but it did discuss the evidence again in such a way as to indicate that it understood the importance of Stephanie's move, as we discuss below.

Nils appeals the denial of his motion for relief from judgment.

## III. STANDARD OF REVIEW

"The superior court has broad discretion in determining custody awards so long as the determination is in the child's best interests."[10]  "We will not reverse a custody order unless the superior court abused its discretion or its controlling factual findings are clearly erroneous."[11]  "The superior court abuses its discretion if it 'considers improper factors in making its custody determination, fails to consider statutorily mandated factors, or assigns disproportionate weight to particular factors while ignoring others.' "[12]  "Factual findings are clearly erroneous if a review of the record leaves us 'with a definite and firm conviction that a mistake has been made.' "[13] "We give 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[14]

"Whether the superior court properly applied the *Moeller-Prokosch* legal

---

[10]     *Nancy M. v. John M.*, 308 P.3d 1130, 1133 (Alaska 2013) (quoting *Stephanie F. v. George C.*, 270 P.3d 737, 745 (Alaska 2012)).

[11]     *Id.*

[12]     *Id*. (quoting *Stephanie F.*, 270 P.3d at 745).

[13]     *Id*. (quoting *Misyura v. Misyura*, 242 P.3d 1037, 1039 (Alaska 2010)).

[14]     *Id*. (quoting *Misyura*, 242 P.3d at 1039).

standard is subject to de novo review."[15] "We review denial of a motion for relief from judgment for an abuse of discretion."[16]

## IV. DISCUSSION

Nils makes two primary arguments on appeal: (1) that the superior court erred in finding Stephanie credible and in relying on her testimony for some of its necessary findings in the custody award; and (2) that the court abused its discretion by denying Nils's Rule 60(b) motion for relief from judgment. Because the only order on appeal is the court's denial of the Rule 60(b) motion, we consider Nils's challenges to Stephanie's credibility and the court's factual findings only in that context.[17] We further note that although Nils's motion for Rule 60(b) relief cited subsections (1), (3), and (6) of the rule, his brief on appeal does not rely on — or even cite — any particular subsection. Because of this deficiency, we could consider his arguments waived.[18] Instead we address briefly each of the subsections Nils relied on in the superior court, concluding that denial of the Rule 60(b) motion was not an abuse of discretion.

### A. Civil Rule 60(b)(1)

Rule 60(b)(1) "permits the trial court, in its discretion, to relieve a party

---

[15] *Saffir v. Wheeler*, 436 P.3d 1009, 1013 (Alaska 2019).

[16] *Fernandez v. Fernandez*, 312 P.3d 1098, 1103 (Alaska 2013).

[17] Nils's brief characterizes this appeal as "from the decision of the Superior Court entered on April 1, 2021." However, the order timely appealed is not the April custody order but rather the November order denying Nils's motion for Rule 60(b) relief. "Rule 60(b) is neither a substitute for an appeal nor a device for obtaining an extension of time for filing an appeal . . . ." *Rowland v. Monsen*, 135 P.3d 1036, 1040 (Alaska 2006).

[18] *See, e.g.*, *Burns-Marshall v. Krogman*, 433 P.3d 1121, 1126 n.16 (Alaska 2018) (holding issue waived where appellant did "not provide any citations or legal arguments for why that was error").

from a final judgment for various reasons, such as 'mistake, inadvertence, surprise or excusable neglect.' "[19] We have "stressed . . . that to gain relief for excusable neglect a party must show not only 'neglect,' but a valid 'excuse' therefor."[20] "[D]eliberate conduct is never mistake or excusable neglect."[21]

Nils argued in his Rule 60(b) motion that he was entitled to relief under subsection (1) because of his own "excusable neglect," as a self-represented litigant, in failing to anticipate that Stephanie "would not be honest with the court"; he claimed he would have presented witnesses had he correctly anticipated that the court would rely on testimony he could have refuted had he been fully prepared. In response to this argument, however, the court stated explicitly that its "decision [was] based on essentially undisputed facts and the admissions of [Nils], [so] it is unlikely that calling additional witnesses would change the findings upon which the decision [was] based." Thus, even if Nils could show excusable neglect, he failed to show that the requested relief — a chance to put on more evidence — would change the custody order. This was reason enough to reject Nils's Rule 60(b)(1) argument.

Furthermore, it was Nils's decision not to call any witnesses at trial. The fact that he considered his decision to have been mistaken — and regretted it — once the court ruled on the evidence the parties *did* present does not make his decision excusable

---

[19]    *Alaska Truck Transp., Inc. v. Berman Packing Co.*, 469 P.2d 697, 698 (Alaska 1970) (quoting Alaska R. Civ. P. 60(b)(1)).

[20]    *Dickerson v. Williams*, 956 P.2d 458, 465 (Alaska 1998) (citing *Rill v. State, Dep't of Highways*, 669 P.2d 573, 576 (Alaska 1983)).

[21]    *Sandberg v. Sandberg*, 322 P.3d 879, 887 (Alaska 2014) (alteration omitted) (quoting *Dickerson*, 956 P.2d at 465).

for purposes of the rule.[22]  The superior court did not abuse its discretion by denying Nils's motion for relief from judgment based on Rule 60(b)(1).

### B.     Civil Rule 60(b)(3)

Rule 60(b)(3) provides that "the court may relieve a party . . . from a final judgment . . . [due to] fraud . . . , misrepresentation, or other misconduct of an adverse party."  "One who asserts fraud, misrepresentation or misconduct as a ground for relief . . . has the burden of proving those assertions by clear and convincing evidence. The conduct complained of must be material in the sense that it prevented the losing party from fully and fairly presenting his case or defense."[23]

Nils argued that he was entitled to relief under subsection (3) because of Stephanie's alleged misrepresentations at trial; to the extent he makes a cognizable Rule 60(b) argument on appeal, it appears to be this.  But while the superior court acknowledged that Stephanie's testimony regarding her older children was "unrealistic," it expressly stated, as noted above, that it relied on mostly undisputed testimony in reaching it custody decision.  And Nils has not shown that any other testimony by

---

[22]     *See, e.g.*, *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1147 (2nd Cir. 1994) ("An argument based on hindsight regarding how the movant would have preferred to have argued its case does not provide grounds for Rule 60(b) relief." (citations omitted)); *cf. Wright v. Shorten*, 964 P.2d 441, 444 (Alaska 1998) (finding excusable mistake when unrepresented litigant sent letter to court in lieu of formal answer, when letter met pleading standards and litigant clearly made efforts to comply with court rules); *Rapoport v. Tesoro Alaska Petroleum Co.*, 790 P.2d 1374, 1377 (Alaska 1990) ("Genuine and severe medical disability generally suffices as excusable neglect."); *Cook v. Rowland*, 49 P.3d 262, 265 (Alaska 2002) (finding defendant's failure to respond in wrongful death case excusable where he had been hospitalized, confined in a maximum security prison, heavily medicated, and dealing with serious criminal charges).

[23]     *Babinec v. Yabuki*, 799 P.2d 1325, 1333 (Alaska 1990) (internal citation omitted) (citing *McCall v. Coats*, 777 P.2d 655, 657 (Alaska 1989)).

Stephanie was misleading; the fact that he disputes some of it does not mean that the court erred by crediting it.[24] The court thus did not abuse its discretion by denying Nils's motion for relief from judgment based on Rule 60(b)(3).

### C. Civil Rule 60(b)(6)

Civil Rule 60(b)(6) provides that "the court may relieve a party. . . from a final judgment, order, or proceeding . . . [due to] any other reason justifying relief from the operation of the judgment." Nils argued that he was entitled to relief under subsection (6) due to the superior court's error in failing to conduct the *Moeller-Prokosch* symmetrical analysis of child custody best interests factors in light of Stephanie's pending move out of state.[25] He reasserts this argument on appeal. We reject it for several reasons.

First, we have held that "Civil Rule 60(b)(1) allows for relief from judgment where a mistake of law has been committed by counsel or by the court."[26] Nils thus could have challenged the court's failure to perform a symmetrical analysis under Rule 60(b)(1). "A party may only obtain Rule 60(b)(6) relief if no other Rule 60(b)

---

[24]    *See Wayson v. Stevenson*, 514 P.3d 1263, 1271 (Alaska 2022) ("[I]t is the province of the [superior] court to judge witnesses' credibility and weigh conflicting . . . evidence." (alterations in original) (quoting *Est. of Smith v. Spinelli*, 216 P.3d 524, 528 (Alaska 2009))).

[25]    *See Moeller-Prokosch III*, 99 P.3d 531, 535-36 (Alaska 2004).

[26]    *Pearson v. Bachner*, 503 P.2d 1401, 1402 (Alaska 1972); *Schandelmeier v. Winchester W.*, 520 P.2d 70, 72 n.6 (Alaska 1974) (noting that "the prevailing view allows the use of 60(b)(1) to raise mistakes of law by the court"); *see Kemp v. United States*, 142 S. Ct. 1856, 1861-62 (2022) ("As a matter of text, structure, and history, the Government is correct that a 'mistake' under Rule 60(b)(1) includes a judge's errors of law.").

clause applies."[27]  Because subsection (1) applied, subsection (6) is not available.

Second, we have strongly discouraged the use of Rule 60(b) as an attempt to relitigate what should instead have been resolved through the appellate process. "Civil Rule 60 is not a substitute for . . . a timely appeal; nor does it allow relitigation of issues that have been resolved by the judgment."[28]  Nils could have filed a timely appeal from the custody order[29] or a motion for reconsideration that would have extended the time for appeal,[30] but he did neither.

Finally, relief under Rule 60(b)(6) is reserved for "extraordinary circumstances."[31]  Although the superior court's symmetrical analysis of the child's best interests falls short of the ideal, it is not so deficient as to risk injustice or to otherwise justify an extraordinary remedy.[32]

---

[27]    *Richard v. Boggs*, 162 P.3d 629, 635 (Alaska 2007).

[28]    *Morris v. Morris*, 908 P.2d 425, 429 (Alaska 1995) (quoting *Burrell v. Burrell*, 696 P.2d 157, 163 (Alaska 1984)); *see also Szabo v. Mun. of Anchorage*, 320 P.3d 809, 815 (Alaska 2014) (observing that Rule 60(b)(6) "is not intended to allow a party to raise legal claims that it failed to bring on direct appeal").

[29]    *See* Alaska R. App. P. 218(d) (providing that appeals from child custody orders "shall be filed with the clerk of the appellate courts within 15 days after the date shown in the clerk's certificate of distribution on the order or judgment").

[30]    *See* Alaska R. App. P. 204(a)(3)(E) (providing that time for appeal "begins to run again" when court grants or denies "motion for reconsideration filed in the trial court under Civil Rule 77(k)").

[31]    *Gross v. Wilson*, 424 P.3d 390, 398 (Alaska 2018) (quoting *Johnson v. Johnson*, 394 P.3d 598, 602 (Alaska 2017)).

[32]    *See Buck v. Davis*, 137 S. Ct. 759, 778 (2017) ("In determining whether extraordinary circumstances are present [for purposes of Rule 60(b)(6) relief], a court may consider a wide range of factors.  These may include, in an appropriate case, 'the
(continued...)

Given Stephanie's plan to move to Texas, the superior court was required to follow the well established *Moeller-Prokosch* "two-step process to determine the best interests of the child."[33] "The first step is to determine whether the planned move is 'legitimate,' which we have defined as 'not primarily motivated by a desire to make visitation . . . more difficult.' "[34] "The second step is to determine what is in the best interests of the child in light of all relevant statutory best interests factors and the reasons for the relocation."[35] The analysis "requires symmetrical consideration of the consequences to [the child] both if [the parent] leaves with [the child] and if [the parent] leaves without [the child]."[36]

The April custody order did not cite the controlling *Moeller-Prokosch* standard. It did not make a specific finding that Stephanie's move was legitimate, though that may be inferred from the award to her of physical custody "[i]f the parties live in different communities." But in its order denying Rule 60(b) relief the court clarified:

---

[32]     (...continued)
risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.' " (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988))); *Hall v. Haws*, 861 F.3d 977, 987 (9th Cir. 2017) ("Rule 60(b)(6) can and should be 'used sparingly as an equitable remedy to prevent manifest injustice.' " (quoting *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993))).

[33]     *Saffir v. Wheeler*, 436 P.3d 1009, 1013 (Alaska 2019) (citing *Moeller-Prokosch v. Prokosch* (*Moeller-Prokosch I*), 27 P.3d 314, 316 (Alaska 2001).

[34]     *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018) (alteration in original) (quoting *Moeller-Prokosch I*, 27 P.3d at 316).

[35]     *Id*. at 85-86.

[36]     *Saffir*, 436 P.3d at 1013 (alteration in original) (quoting *Moeller-Prokosch III*, 99 P.3d 531, 535-36 (Alaska 2004)).

"The mother is free to move. All things considered, her decision to move is reasonable and made in good faith." Although the court did not identify Stephanie's reason for moving, it suggested that one factor may have been her ill-treatment by Nils and his family. Because "[a] move is legitimate if it is not primarily motivated by a desire to make visitation more difficult,"[37] the court's findings support the legitimacy of Stephanie's move.

The custody order does contain some findings relevant to a symmetrical best interests analysis. Its analysis of one factor — "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child"[38] — is clear. The court stated,

> The parties plan to live in separate states. The custodial parent in a long distance custody case must be a good gatekeeper parent who can encourage and facilitate a long distance relationship between the child and the other parent. The father and the father's family are deficient in this regard. By comparison, the mother has encouraged the relationship between the child and the father and the father's family. The mother would better facilitate a long distance relationship between the child and the other parent.

This shows the court's appropriate consideration of the consequences on the parent-child relationships both if Stephanie moved with the child and if she moved without the child.

The court also considered the child's attachment to her "two half-siblings . . . and close grandparent ties with the paternal grandparents" in Alaska, concluding that Stephanie was "best able to meet the important social needs for [the child] to maintain the ties with her siblings." These findings are relevant to the "relational stability" we

---

[37] *Rego v. Rego*, 259 P.3d 447, 453 (Alaska 2011) (citing *Moeller-Prokosh I*, 7 P.3d at 316).

[38] AS 25.24.150(c)(6).

have determined to be an important part of the "stability and continuity" factor.**[39]** And relational stability in turn involves consideration of "social and emotional factors such as who the primary care-giver was for the child,"**[40]** which the court clearly decided weighed in Stephanie's favor: the court found that she "has been the primary parent for [the child,] . . . has been primarily responsible for meeting [the child's] medical needs and has significantly more actual parenting time with the child than the father," and is "likely see[n] [by the child] as the primary caretaker."

We have held that a "symmetrical analysis does not require detailed parallel findings on every best interests factor."**[41]** "[I]t is sufficient if the court's findings provide 'a clear indication of the factors [that the court] considered important in exercising its discretion or allows us to glean from the record what considerations were involved.' "**[42]** Although the superior court did not expressly follow the governing *Moeller-Prokosch* analytical framework, we are not convinced that its analysis reached an unjust result or otherwise indicates the extraordinary circumstances that would justify relief under Rule

---

**[39]** *See* AS 25.24.150(c)(1)-(2) (requiring consideration of each parent's "capability and desire" to meet child's needs, including "social needs"); AS 25.24.150(c)(5) (requiring consideration of "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity"); *Saffir*, 436 P.3d at 1013 ("We have explained that where one parent is moving from Alaska, [the stability and continuity factor] requires the superior court to consider 'not only the desirability of maintaining geographical continuity, but also the importance of maximizing relational stability.' " (quoting *Chesser-Witmer v. Chesser*, 117 P.3d 711, 719 (Alaska 2005))).

**[40]** *Saffir*, 436 P.3d at 1013 (quoting *Veselsky v. Veselsky*, 113 P.3d 629, 635 (Alaska 2005)).

**[41]** *Mengisteab v. Oates*, 425 P.3d 80, 87 (Alaska 2018) (alteration in original).

**[42]** *Id.* (second alteration in original) (quoting *Caroline J. v. Theodore J.*, 354 P.3d 1085, 1092 (Alaska 2015)).

60(b)(6).  For this reason, too, we conclude that the court's denial of Nils's Rule 60(b) motion was not an abuse of discretion.

## V.    CONCLUSION

The superior court's custody order is AFFIRMED.